**BUTLER v. THOMPSON et al.**

No. 6154.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 13, 1950.

Decided Oct. 16, 1950.

John Locke Green and Frank L. Ball, Arlington, Va., (J. Foster Hagan, Arlington, Va., on the brief), for appellant.

Walter E. Rogers, Assistant Attorney General of Virginia, John W. Jackson, Arlington, Va., and J. Lindsay Almond, Jr., Attorney General of Virginia, for appellees.

Before PARKER, Chief Judge, and SOPER, and DOBIE, Circuit Judges.

PER CURIAM.

This is an appeal in an action involving the constitutionality of provisions of the Constitution and statutes of the State of Virginia requiring the payment of poll tax as a prerequisite to voting. The plaintiff in the action is a Negro woman otherwise qualified to vote under the laws of Virginia who has been denied the right to register and vote because she has not paid poll tax. She asks that election officials of the state be enjoined from denying her the right to register and vote on the ground of the nonpayment of poll tax and that she be awarded damages for the wrong heretofore done in denying her that right. A court of three judges was demanded by plaintiff under 28 U.S.C.A. §§ 2281 and 2284, but was denied on the ground that the contention as to the unconstitutionality of the challenged provisions of the Constitution and statutes of Virginia did not present a substantial question and the action was dismissed.

The complaint alleges that the requirement of the payment of poll tax as a prerequisite to voting was one of several provisions inserted in the Constitution of Virginia for the purpose of denying to Negro citizens the right of suffrage and that it is now being administered in such way as to discriminate against them and exclude large numbers of them from voting. In view of these allegations, we must hold that substantial questions are presented which require decision by a District Court of three judges, since the questions go to the constitutional validity of the challenged provisions of Virginia law. As said by this Court in Rice v. Elmore, 4 Cir., 165 F.2d 387, 392: "The Fourteenth and Fifteenth Amendments were written into the Con-

stitution to insure to the Negro, who had recently been liberated from slavery, the equal protection of the laws and the right to full participation in the process of government. These amendments have had the effect of creating a federal basis of citizenship and of protecting the rights of individuals and minorities from many abuses of governmental power which were not contemplated at the time. Their primary purpose must not be lost sight of however; and no election machinery can be upheld if its purpose or effect is to deny to the Negro, on account of his race or color, any effective voice in the government of his country or the state or community wherein he lives."

Pertinent to the point here involved is what was said by the District Court of three judges in Davis v. Schnell, 81 F.Supp. 872, 880, holding unconstitutional the Boswell amendment to the Constitution of Alabama prescribing an educational qualification for suffrage designed to disfranchise Negro voters. Said the Court: "It, thus, clearly appears that this Amendment was intended to be, and is being used for the purpose of discriminating against applicants for the franchise on the basis of race or color. Therefore, we are necessarily brought to the conclusion that this Amendment to the Constitution of Alabama, both in its object and the manner of its administration, is unconstitutional, because it violates the Fifteenth Amendment. While it is true that there is no mention of race or color in the Boswell Amendment, this does not save it. The Fifteenth Amendment 'nullifies sophisticated as well as simple-minded modes of discrimination,' and 'It hits onerous procedural requirements which effectively handicap exercise of the franchise by the colored race although the abstract right to vote may remain unrestricted as to race.' "

The complaint in this case repeats allegations contained in the complaint in Michael v. Cockerell, 4 Cir., 161 F.2d 163, 164, which was before us three years ago. Although the appeal in that case was dismissed as moot, we pointed out that the complaint raised questions of the gravest character, which, if the case were properly before us, would merit our most careful consideration. We said: "The complaint and offers of proof raise questions of the gravest character, which, if presented in a case properly before us, would merit our most careful consideration. It is alleged that the provisions of the Constitution of Virginia with respect to the payment of poll tax as a prerequisite of voting were deliberately adopted for the purpose of disfranchising Negro citizens, that the debates and records of the constitutional convention so show and that the provisions are at present administered for that purpose and with that effect. It is further alleged that thousands of citizens, white as well as colored, are denied the right to vote because of the way in which these provisions are administered, and that the right to vote is limited to such an extent that the republican form of government guaranteed by the Constitution of the United States is denied and the privileges and immunities of citizens of the United States are substantially abridged. There is allegation that as many as fifty thousand persons otherwise qualified are kept from voting in the congressional district in question as the result of the poll tax requirement, and that in the state at large it has resulted in less than 22% of those otherwise qualified participating in elections. We are not impressed by the argument that such grave violations of the constitutional rights of citizens as those here alleged present merely political questions with which courts are powerless to deal. In a case properly before us, it would be our duty to inquire whether upon the allegations and proofs rights of citizens guaranteed by the Constitution were being denied them and, if so, to grant appropriate relief."

There was error in refusing to take appropriate action for convening a statutory court of three judges to hear the case, as substantial constitutional questions were unquestionably involved.[1] We do not here

---

1. See Report of Senate Judiciary Committee of the 77th Congress relating to poll tax; Senate Report No. 1662, 77th Cong., 2d Sess.; Cong. Rec. 77th Cong., 2d Sess., Vol. 88, pp. 9029–9031.

528

attempt to pass upon these questions, as they are matters for the judgment of the three judge District Court, with review thereof, if any, by the Supreme Court of the United States.

The judgment dismissing the action will be reversed, and the case will be remanded to the District Court, with direction that a court of three judges be constituted as required by statute to pass upon the questions involved.

Reversed and remanded with directions.