WILSON & CO., Inc., a Delaware corporation, Plaintiff,

v.

Orville L. FREEMAN, Governor of the State of Minnesota, Major General Joseph E. Nelson, Adjutant General of the State of Minnesota, Major General Richard Cook, Everette H. Stovern, Sheriff of Freeborn County, O. Russell Olson, County Attorney, Freeborn County, Charles Heilman, Chief of Police, City of Albert Lea, and Niles R. Shoff, Mayor of the City of Albert Lea, Defendants.

No. 4–59 Civ. 307.

United States District Court
D. Minnesota,
Fourth Division.

Dec. 22, 1959.

**522**

David L. Grannis, Jr., and Vance B. Grannis, of Grannis & Grannis, South St. Paul, Minn., and Donald F. Pratt, of Guesmer, Carson, MacGregor, Clifford & Pratt, Minneapolis, Minn., appeared in behalf of plaintiff.

Lee Loevinger, Minneapolis, Minn., appeared and entered a general appearance in behalf of Major General Joseph E. Nelson, Adjutant General of the State of of Minnesota, and a special appearance in behalf of Major General Richard Cook, Commanding General of the Minnesota National Guard Detachment Station at Albert Lea, Minn., who according to the record had not been served with process.

Miles Lord, Atty. Gen. of Minnesota, appeared in behalf of the remaining defendants.

Before SANBORN, Circuit Judge, and DEVITT and NORDBYE, District Judges.

PER CURIAM.

This cause came on for hearing on December 16, 1959, at Minneapolis, Minnesota, before John B. Sanborn, United States Circuit Judge, and Edward J. Devitt and Gunnar H. Nordbye, United States District Judges, impaneled as a statutory three-judge court under the provisions of Section 2284, Title 28, United States Code, upon the application of the plaintiff for an interlocutory injunction. Defendants filed motions to dismiss upon the grounds that the Court lacked jurisdiction over the persons of the defendants and the subject matter; that the complaint failed to state a cause of action, and specifically, in that the jurisdiction of the Court was based upon the Fourteenth Amendment to the Constitution of the United States, no jurisdiction existed because the action complained of by the plaintiff was not an action of a State and therefore is not within the scope of said Amendment. In addition, it is contended that a three-judge court was improperly impaneled in this matter, citing Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800.

■■ The application for an interlocutory injunction was submitted upon the bill of complaint, the answers of the several defendants, and the affidavits filed by the respective parties. In that no service was made on Major General Cook, the motion as to him is dismissed. How-

ever, we do not regard him as an indispensable party in this proceeding. The controlling factual matters are not in marked dispute and may be briefly stated as follows:

Plaintiff is engaged in the operation of a meat packing plant in the City and Township of Albert Lea, Freeborn County, Minnesota. It employs in the production end of its business some 1,100 employees, together with some 200 supervisory or staff officials. In the operation of its business it maintains the customary buildings and facilities usually required in the meat packing industry. For many years the production employees have been represented by the United Packinghouse Workers of America, commonly referred to as U.P.W.A. A local union of a similar name is generally referred to as Local Union No. 6.

Since on or about October 29, 1959, a strike has existed as between the production employees represented by Local Union No. 6 and plaintiff at the latter's Albert Lea plant, and the plant has been picketed. Plaintiff attempted to continue its operations with some of its supervisory and maintenance employees. Later on, however, plaintiff began to employ and solicit the employment of new workers, with the public announcement that, if its striking employees did not return to work, their positions would be filled by new employees. The new employees were recruited generally from the rural areas in Freeborn County and contiguous counties and a number from the State of Iowa. Albert Lea is situated about twenty miles from the Iowa state line. The new employees from Iowa, however, did not substantially exceed the number of Iowa residents employed before the strike. Beginning in November, 1959, the employees increased in number so that by December 8, 1959, plaintiff's plant was operating at about one-half capacity with approximately 500 production employees in addition to plaintiff's regular supervisory and maintenance staff. In the meantime, however, there were some acts of violence on the picket line by the pickets which led to an order issued by the District Court of Freeborn County enjoining the local union from interfering with free access to plaintiff's plant and enjoining the strikers from acts of violence or threatened violence. Subsequently, certain alleged violators on the picket line were cited for contempt of court, the citation being returnable on December 15, 1959. On December 8, 9 and 10, 1959, the number of pickets on the picket line increased. Large crowds estimated on December 10th to be over 1,000 persons gathered in and about plaintiff's plant attempting to block the entrance to the plant so that the production employees could not leave the plant. Rocks were thrown by the crowd at the cars carrying the production employees to and from the plant. Windows of automobiles were broken and cars damaged. Non-striking workers were threatened with bodily harm. Police, as well as union officials, unsuccessfully attempted to quell the acts of violence and the massing of pickets by pleading with the pickets to disperse, to refrain from violence, and to return to their homes. However, such pleas were of no avail. No attempts were made by the police to arrest any of the mob indulging in the acts of violence. The District Court of Freeborn County, on December 10, 1959, did issue a supplemental restraining order, which among other matters limited the number of pickets to four at any one entrance. This order, however, was not served by reason of the Governor's subsequent decree of martial law and the suspension of all restraining orders issued by the District Court in a proclamation promulgated by the military authorities acting under the decree of martial law. Moreover, the District Court was forbidden by the military to issue any further orders in the labor dispute between plaintiff and the striking workers. In addition to the mob violence at the plant, there were acts of vandalism, principally at the farms of some of the non-union production workers, all of which apparently were carried on by the strikers for the purpose of intimidating those who continued to work at plaintiff's plant.

It was shortly after midnight on December 11, 1959, that the law enforcement officials of the City of Albert Lea and Freeborn County addressed a letter to Orville L. Freeman, Governor of the State, requesting that he act under his powers under Article V, Section 4, of the Minnesota Constitution, M.S.A. and assume responsibility for the maintenance of law and order in the City and County, and that he temporarily close the Wilson & Co. plant. A copy of the order is attached hereto as Exhibit "A". Within hours after receiving this communication, the Governor made a finding that a state of insurrection existed in the City of Albert Lea and County of Freeborn, and proclaimed that martial law prevailed in said City and County. A copy of the proclamation of the Governor is attached hereto as Exhibit "B". In pursuance of the proclamation of the Governor, the Major General of the Minnesota National Guard issued a proclamation in which he declared that the continued operation of plaintiff's plant would precipitate riots and other acts of violence, and ordered the suspension of any operation of the plant, and further ordered that no person should be permitted ingress to or egress from the plant except as permitted by the military. Moreover, he forbade any person to loiter, congregate or assemble in the vicinity of the plant, and declared that "The civil jurisdiction of all legally constituted courts of law in the jurisdiction concerned in this Proclamation shall continue to operate with full force and effect except that any and all court orders pertaining to the dispute between the Wilson Company Packing Plant at Albert Lea and the labor union representing the striking workers are hereby suspended and all courts shall be without jurisdiction to issue any further orders or decrees pertaining thereto until further order." A copy of the Major General's proclamation is attached hereto as Exhibit "C".

At the time of the closing of the plant, there were some millions of pounds of meat and meat products in various stages of processing; in addition, there were 139 head of cattle, 1,700 hogs, and 129 sheep purchased or held by plaintiff for the purpose of slaughter and processing. The meat and meat products in the plant were in danger of spoilage by reason of their perishable nature. After conference with officers of plaintiff and union officials of Local Union No. 6, the military on December 13, 1959, permitted plaintiff to call back some 300 non-union workers to enter the plant in order to process the meat and meat products which were in danger of spoilage. However, the military authorities required the plaintiff to reduce the number of employees from day to day, so that at the end of the seventh day there would remain only some 100 production employees and when the processing was completed the order of the military was that the plant should remain closed. Moreover, the condition imposed upon the plaintiff by the military was that there should be no further slaughter of any of the animals on hand.

■ At a conference between Court and counsel for the plaintiff and the Governor before the hearing on December 16, 1959, the question as to whether or not this proceeding for a temporary injunction required the calling of a statutory three-judge court was discussed. All parties present, through their respective counsel, stipulated that a statutory three-judge court could be called, and they assumed to expressly waive any jurisdictional objection thereto. However, although a statutory three-judge court herein was duly impaneled, we conclude that in view of Phillips v. United States, supra, we are sitting in this proceeding as a District Court of three judges rather than a statutory three-judge court under Section 2284, Title 28, United States Code.

■ Counsel for the defendants raise the question of jurisdiction in that plaintiff predicates jurisdiction herein on the Fourteenth Amendment to the Constitution of the United States. The contention is made that the action complained of by the plaintiff is not the action of the State and therefore is not

within the scope of the Fourteenth Amendment. We find no merit, however, in that contention. Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L. Ed. 375; Mooney v. Hollohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; Home Telephone & Telegraph Co. v. City of Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510; Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19. In passing, it may be noted that the complaint sets forth diversity of citizenship and alleges that the controversy involves $10,000 exclusive of interest and costs. In any event, the Court is clear that jurisdiction exists.

At the threshold of this proceeding, we are met with the question as to the Governor's right to place the City of Albert Lea and the County of Freeborn under martial law. He purports to act under the Constitution of the State of Minnesota under Article V, Section 4, which provides that "He shall be commander-in-chief of the military and naval forces, and may call out such forces to execute the laws, suppress insurrection and repel invasion." This same Article provides that the Governor "shall take care that the laws be faithfully executed, * * *." There is no language in the Constitution which specifically empowers the Governor to declare martial law. But obviously where there is actual war in a community, or where insurrection or revolt occurs so that the duly constituted government is usurped and overcome by the insurrectionists or mobs, the Governor is impliedly authorized to declare martial law. But where any disturbance caused by a strike or otherwise presents a situation with which the local police or other local law enforcement agencies are not able to cope, it does not follow that, without more, the drastic and oppressive rule of martial law can be imposed upon any community. The Governor has the power to call out the National Guard to aid the local authorities in suppressing violence in labor disputes and he is under the sworn duty to enforce the laws with the use of such powers as the law affords. Under martial law, the rights of citizens may be abridged and greatly restricted. In fact, the basis for martial law assumes that local government has completely broken down and is, or is about to be taken over by the forces of a mob. No one will disagree that a serious situation existed at or near plaintiff's plant at Albert Lea when strikers and their sympathizers sought by mob violence to prevent some 500 persons from carrying on their lawful employment with plaintiff. Obviously, however, plaintiff was within its rights notwithstanding the strike in attempting to keep its plant in production and to afford employment to those persons who were willing to work. Plaintiff is protected by the Constitution of the United States in its right to possess its property and to use it in any lawful manner that it may desire to pursue. Plaintiff cannot be held responsible for mob violence which was allegedly precipitated by its attempt to keep its plant open. A strike by union workers does not prevent the employer from employing non-union workers in its plant. That the laws of Minnesota are enacted for the express purpose of curbing violations of law of the kind herein recounted is clear from the following statutes:

"When three or more persons, having assembled for any purpose, shall disturb the public peace by using force or violence to any other person or to property, or shall threaten or attempt to commit such disturbance, or to do any unlawful act by the use of force or violence, accompanied by the power of immediate execution of such threat or attempt, they shall be guilty of a riot." M.S.A. § 615.02.

"When three or more persons shall assemble with intent:

"(1) To commit any unlawful act by force;

"(2) To carry out any purpose in such a manner as to disturb the public peace; or

"(3) Being assembled, shall attempt to threaten any act tending toward a breach of the peace or an

injury to persons or property, or any unlawful act—

"Such an assembly is unlawful, and every person participating therein, by his presence, aid, or instigation, shall be guilty of a misdemeanor." M.S.A. § 615.04.

"Every person who shall remain present at the place of an unlawful assembly, after having been warned to disperse by a magistrate or public officer, unless as a public officer or at the request of any such officer he is assisting in dispersing the same, or in protecting persons or property or in arresting offenders, shall be guilty of a misdemeanor." M.S.A. § 615.05.

"Every person who enters into a combination with another to resist the execution of any legal process or other mandate of a court of competent jurisdiction, under circumstances not amounting to a riot, shall be guilty of a gross misdemeanor." M.S.A. § 615.07.

"Every person who shall * * * throw any deadly missile, in a public place, or in any place where there is any person to be endangered, although no injury actually results, shall be guilty of a misdemeanor." M.S.A. § 615.09.

"Any person who shall use in reference to and in the presence of another, or in reference to or in the presence of any member of the family of another, abusive or obscene language, intended, or naturally tending to provoke an assault or any breach of the peace, shall be guilty of a misdemeanor." M.S.A. § 615.-15.

At the time the Governor declared martial law, the local government of the City of Albert Lea and the County of Freeborn was functioning. The courts were open, the citizens were moving freely in and about their daily pursuits without danger, except those who desired to continue with their work for plaintiff. The District Court of Freeborn County had issued restraining orders against mass picketing and violence, and contempt citations by reason of the violation of such orders had been set for hearing before the court, but without any attempt to call out the National Guard in aid of the civil authorities in maintaining peace and order in the suppression of mob violence, the Governor summarily declared martial law for the City of Albert Lea and the entire county of Freeborn. The rights of the courts to proceed against members of the mob by way of contempt were enjoined. The workers who desired to return to their work at the plant were forbidden to return, and plaintiff's right under the Federal Constitution to operate its plant was abrogated by the decree of the military.

We are not unmindful of the discretion which must necessarily rest in the Governor of a State in determining whether martial law, with the resulting deprivation of constitutional rights, shall be imposed upon any community. Moreover, we recognize that courts should proceed cautiously before interfering with the acts of a Governor of a sovereign State in determining that martial law is necessary in the State of which he is the chief executive and commander-in-chief of the armed forces of the State. We are also mindful of the necessity of preventing bloodshed and that property rights must at times be sacrificed in order to prevent the spilling of blood. But a free people do not surrender to mob rule by the expediency of martial law until all means available to the City, County and State to enforce the laws have proved futile. The imposition of the drastic action and the curtailment of constitutional rights of citizens of a State resulting from a declaration of martial law, cannot be sustained except in situations of dire necessity. We are convinced that that situation has not as yet arisen in Freeborn County.

The Governor possesses no absolute authority to declare martial law. Military rule cannot be imposed upon a community simply because it may seem to be more expedient than to enforce

the law by using the National Guard to aid the local civil authorities. As this Court stated in Strutwear Knitting Company v. Olson, 13 F.Supp. 384, 390,

"The state has no more important interest than the maintenance of law and order. \* \* \* It is as much the duty of the state to protect property from destruction by mob violence and to preserve the liberty of the citizen to use his property lawfully as it is to protect the same property from theft or arson. No official intrusted with the enforcement of the law can select the laws which he will enforce or the citizens that he will protect. He has sworn to enforce all laws and to protect all citizens, and there is no escape for him 'from the paramount authority of the Federal Constitution.' Sterling et al. v. Constantin et al., supra, 287 U.S. 378, at page 398, 53 S.Ct. 190, 195, 77 L.Ed. 375, \* \* \*.

"The fact that a large group of individuals may have a grievance, just or unjust, against an owner of property will not warrant a resort to violence to remedy that grievance, nor will the hazard, inconvenience, and expense involved in suppressing the violence justify the state in refusing to enforce the law or in depriving the owner of his property or his right to enjoy it. To say that, because the lawful use of property will incite lawless persons to commit crimes and to destroy life and property, such lawful use must be suppressed, is to say that the will of a mob, and not the Constitution of the United States, has become the supreme law of the land."

But it is urged that the Governor's judgment as to the measures necessary to be taken to suppress the mob should not be questioned by the Courts and in absence of arbitrary, capricious conduct on his part in declaring martial law, the Courts are impotent to stay his hand. However, there is an utter absence of any persuasive showing here that law enforcement could not be maintained in the City of Albert Lea and in the County of Freeborn by the National Guard available to the Governor in aid of the local authorities. Moreover, we cannot subscribe to the principle or doctrine that a Governor of a State may bow to the demands of a law-violating mob that a plant under strike shall be closed when neither the local nor State authorities have used all the means available to them to suppress the mob by invoking enforcement of the laws of the State enacted to be enforced under such circumstances. Peace and order may be restored by acceding to the demands of the mob, but at the sacrifice of law. Such expedient measures would encourage and breed mob rule and law violations in every labor dispute. No citizen would be secure in the peaceful possession of his property. By way of analogy, let us assume a situation that not infrequently arises in our country. Racial hatred, for instance, against so-called minority citizens moving into a community, with the resulting demand that such citizens leave the neighborhood, often incites mob action. If the violence could not be suppressed by local authorities, a Governor could impose martial law and the military could issue an order that the innocent citizens leave the neighborhood because if they did so, peace and tranquillity would prevail. Lawlessness in this manner could be suppressed, but it would be obtained by compelling the victims of such lawlessness to surrender their constitutional rights so precious to all freedom-loving people.

It is entirely understandable that the local officials of the City of Albert Lea and the County of Freeborn when they met on the evening of December 10th were greatly exercised and concerned as to what might happen on the following day in light of the mob violence which had already taken place at plaintiff's plant, and that that concern prompted the promulgation of the petition to the Governor for aid. But when the military moved into the City on the morning of December 11th, it must have been ap-

parent that in this local labor dispute the State of Minnesota was not required to surrender to mob violence. Under the factual presentation herein, it would be a shocking reflection on the stability of our State Government if the State could not quell the mob action in Freeborn County without declaring martial law and decreeing the deprivation of constitutional rights of those who are the victims of the lawlessness.

 This is the second time in the history of Minnesota that martial law has been declared by a Governor. A declaration of martial law connotes the disintegration of the local and State Government which has been created to maintain peace and order under civil rule. Under martial law, all constitutional rights could conceivably be abolished. There could be no freedom of the press, freedom of speech, freedom of assembly, freedom from unreasonable search and seizure, and all courts could be abolished except the military courts established by the military. The abdication of our civil form of government to military rule, with the seizure of private property in contravention of Federal constitutional rights, cannot be sustained on this record. In our opinion, the lawlessness and violence in Albert Lea and Freeborn County did not constitute either "insurrection" or "invasion" within the meaning of Article V, Section 4, of the Constitution of the State of Minnesota.

 Reference has been made to Powers Mercantile Co. v. Olson, 7 F.Supp. 865, in which this Court, after a declaration by the Governor of martial law in the City of Minneapolis, declined to enjoin the enforcement of a military order denying to plaintiff the right to use their trucks on the streets of Minneapolis. We made no finding in that case as to the Governor's right to declare martial law. Admittedly, the factual situation there markedly differed from that with which we are now confronted. In any event, each case must be determined on its own facts. The refusal to grant a preliminary injunction in the Powers case was due to the peculiar circumstances of that case, and is no precedent here in support of defendants' position.

 In closing, it may be noted that, if it can be successfully urged that during the early morning of December 11th the apparent exigencies of the situation seemed to justify the declaration of martial law, it must be apparent that, upon sober reflection, the situation at the time the complaint herein was filed impellingly justifies a finding that the need for martial law in Albert Lea and Freeborn County no longer exists. Certainly, the civil authorities, with the aid of the National Guard, can control any further disturbance in and around the plant of the plaintiff without the closing of the plant and without an order forbidding workers who desire to work the right of free ingress to and egress from their place of employment. We are convinced that present conditions no longer require denial to the plaintiff of its constitutional rights, and that the prayer for relief in its complaint should be granted.

The above is adopted as the Court's findings of fact herein, and as conclusions of law the Court finds that it has jurisdiction of this suit; that the several motions to dismiss should be, and hereby are, denied; that plaintiff is entitled to an interlocutory injunction during the pendency of this suit and until further order of the Court restraining the defendants, and each of them, and all persons acting under or for them, from in any way preventing plaintiff from possessing or using its plant and property in any lawful manner, and from interfering with the right of plaintiff, its officers, agents and employees, to have free and unlimited access to and egress from its said plant and property. Upon the giving of a bond in the usual form in the sum of $5,000, to be approved by a Judge of this Court, such a writ of injunction shall issue. It is so ordered. A stay until December 27, 1959, at 12:00 midnight, is hereby granted.

Exceptions are reserved.

Exhibit A

The Honorable Orville L. Freeman
Governor of the State of Minnesota
State Capitol
Saint Paul, Minnesota

Honorable Sir:

The law enforcement officials of the City of Albert Lea and Freeborn County, Minnesota, have been faced with and have continued to meet a serious problem of law enforcement during the past few weeks, arising out of a strike at the Wilson and Company Packing Plant, which lies at the boundary of the city. The plant lies outside the city, but the main entrance lies within the city. The Freeborn County Sheriff's Office and the Albert Lea Police Department have cooperated during this period in attempting to maintain law and order under extremely trying conditions. However, within the past few hours the following developments have taken place:

1. Large numbers of weapons including guns, knives, blackjacks as well as other dangerous instruments, have been discovered or reported on or in the automobiles of an increasing number of persons currently working in the Wilson and Company plant in passing through the picket lines of the striking union. Threatening language has been used in connection with the carrying of these weapons. These workers for the most part reside outside the area of the city and measures to prevent the carrying and potential use of such weapons have proved ineffective inside and outside the plant entrance.

2. Increasingly large numbers of persons are congregating and milling in the area of the plant entrance, and because of the number of people, and the location and area of the plant entrance, it has proved impossible in the last few hours for the Sheriff's office and the City Police to prevent the people from congregating, despite the mustering of all available manpower. As a result, serious and repeated property damage and personal injury has occurred to vehicles and persons passing in and out of the plant entrance.

3. The extreme tensions arising between the striking workers and the non-striking workers of Wilson and Company, has created a violent and lawless situation, which extends not only to the plant itself and its entrance, but to other parts of the city, county, and surrounding counties. Nightriders intent on vandalism are roaming the countryside. Corncribs have been slashed, spilling the contents on the ground. Countless windows are being broken in houses, vehicles and buildings throughout the city and county; tires have been slashed; threats against life and limb have been made, also other extreme acts of vandalism are occurring as this is being written. Safe transportation of vehicles on the trunk highways of the county is seriously jeopardized. Acts of violence are taking place between strikers and non-striking workers, not only at the plant and its entrance, but in the surrounding area of the city and county.

4. The local plant management has requested tear gas and riot guns for use within the plant area.

5. Law and order at the plant area and in the adjoining urban and rural areas, extending even into surrounding counties, is not and cannot be maintained under present circumstances of the plant operation. Egress and ingress of persons and vehicles to the plant is so repugnant to the persons outside the plant, that its continued operation is a threat to the peace of the city and county and the safety of the citizens therein. Night prowling and acts of vandalism away from the plant area extending into the surrounding countryside, with danger and damage occurring to innocent persons, not connected with the plant operation, cannot be stopped, so long as the plant continues operation under the present

circumstances. The presence of firearms and other dangerous weapons within the plant on the persons or in the vehicles of non-striking workers, and their threatened use outside the plant, is in itself a danger to the peace of the surrounding community and to the safety of the citizens therein. Likewise, the presence of firearms and the attitude of plant management and Union is such as to incite further violence from within the plant.

6. The restraining orders of the local District Court have not been effective in preserving the peace of the community and in preventing violence. Local law enforcement officers have been ineffective in obtaining compliance therewith. The Sheriff of Freeborn County, together with the Chief of Police of the City of Albert Lea, do not believe that law and order can be maintained under their jurisdiction and supervision, even with the assistance of the State Militia; Militia cannot patrol the countryside to prevent vandalism and other criminal wrongs therein. Their conclusion is that the governor, acting under his powers vested in him by Article 5, Section 4 and other applicable sections of the Constitution of the State of Minnesota and its laws, should assume responsibility for the maintenance of law and order in the city and county area—temporarily closing the Wilson and Company Packing Plant in the Township of Albert Lea, Freeborn County, Minnesota. They do hereby request the governor to assume said responsibility and to so act.

7. As of 12:01 A.M. December 11, 1959, the foregoing recitals, by virtue of the necessity of time, constitute a summation of the reasons for our urgent request that the governor take immediate action to bring an end to this state of lawlessness, rioting and insurrection.

In the Presence of:

Everette H. Stovern,
Sheriff of Freeborn County

O. Russell Olson,
County Attorney, Freeborn County

Charles Heilman,
Chief of Police, City of Albert Lea

Niles R. Shoff,
Mayor of the City of Albert Lea

---

Exhibit B

Proclamation

It having been made to appear to me that tumults, riots and mob violence have occurred in the City of Albert Lea and the County of Freeborn, State of Minnesota; that bodies of men together by force have attempted to commit felonies and to offer violence to persons and prop-

erty in said city and county, and by force of violence to break and resist the laws of this state. imperiling the lives, health and property, and general welfare of the citizens of that city and county, and that the civil authorities thereof are wholly unable to cope with the situation or to preserve and maintain law and order. I hereby find and declare that a state of insurrection exists in the city of Albert Lea, and County of Freeborn. Now, therefore, I, Orville L. Freeman, Governor of the State of Minnesota, acting as Commander in Chief of the Minnesota National Guard, do hereby assume Military command of and over the said City of Albert Lea, and County of Freeborn, and all property therein, and all civilians and other persons therein, and all who may hereafter come into said city and county, and I do hereby declare and proclaim that military rule exists therein. By virtue of the power and authority vested in me, I hereby direct and command The Adjutant General of the State of Minnesota to utilize all or such portions of the Minnesota National Guard as he may deem necessary, prescribing such rules and using such means and force as he deems proper in his judgment and discretion, to create and preserve good order in said city and county, and to bring about a restoration of peace and of law enforcement in said city and county.

I do admonish all persons including all peace officers, in said city and county, to yield prompt and precise obedience to all orders, rules and regulations which the local commander of said military force or any one thereto duly authorized by him may from time to time give or establish; Hereby warning all persons who may do or say anything injurious to said military force or interfere with its operations or give aid or comfort to those who may violate the military orders, rules or regulations, given or established as aforesaid, that prompt and exemplary punishment will be visited upon them and that the pains and penalties consequent upon such acts or words cannot safely or properly be limited and will not be limited to such pains and penalties as are fixed by the municipal or other law heretofore and in normal and peaceful times prevailing in said county and I do warn all persons who violate the military orders, rules and regulations, that they will be arrested and detained by the military force until their cases can otherwise be disposed of. I do further declare military rule shall continue in said city and county, until revoked by me.

In witness whereof, I have hereunto set my hand and caused the seal of the State of Minnesota to be affixed this eleventh day of December, 1959.

/S/ Orville L. Freeman
Governor of Minnesota

Exhibit C

Headquarters, Minnesota
Military Troops
Troop Commander's Office
National Guard Armory
Albert Lea, Minnesota

11 December 1959

Proclamation

Whereas, certain territory within the State of Minnesota has been proclaimed by the Governor of the State of Minnesota to be in a state of insurrection by Executive Proclamation dated December 11, 1959, and Whereas, by said Proclamation, the military forces of the State of Minnesota have been ordered by the Governor of the State of Minnesota and the Commander-in-Chief of said military forces, to assume charge and to restore order within the area described in said Proclamation;

Now, Therefore, I, Major General Richard Cook, Minnesota National Guard, being duly appointed and authorized Commander of Troops in the said area, do hereby assume command and control of the following area: The City of Albert Lea, the County of Freeborn, and I do enjoin upon all persons, corporations, and officials therein complete compliance with all orders and instructions which I may now or hereafter issue; and I hereby promulgate and publish the following rules and regulations, which will

be enforced by the said military forces of the State of Minnesota within the area described until further orders:

1. All constitutional rights of whatever kind will be held inviolate and will not be disturbed except by direct command of the Commanding Officer of the affected area, as the exigencies of the public welfare may necessitate.

2. All civil activities and all officers, offices, boards, and commissions of the City of Albert Lea and/or County of Freeborn shall continue to operate and function according to law, save and except that the Police Department of the City of Albert Lea and the office of the Sheriff of Freeborn County and all sheriffs and deputies thereof and all officers of the Minnesota State Highway Patrol shall be, and the same hereby are, subordinated to the military forces under my command, and the said Police Department of the City of Albert Lea and the office of the Sheriff of Freeborn County and all sheriffs and deputies thereof, shall be amenable to the direction of the Troop Commander.

3. All shops, theaters, places of public amusement and places of business, except as hereinafter expressly provided, will be kept open as usual in time of peace and all persons are enjoined to continue their customary peaceful occupations. The assemblage of the usual and ordinary groups and persons at the places designated in this paragraph shall not be deemed to be a violation of the terms of this Proclamation.

4. Except as herein provided, or when the existence of military rule implies the contrary, the criminal code of the State of Minnesota and the ordinances of the City of Albert Lea are hereby continued in full force and effect throughout the said area and those guilty of offenses against the said code of said ordinances or said ordinances or either of them shall be tried and punished in the manner provided by the applicable code or ordinance or ordinances, save and except such cases as the Troop Commander may, from time to time, determine, which cases shall be tried and punished by such provost courts as he may ordain and establish.

5. The assemblage and/or gathering together of groups of more than 50 individuals outdoors in the City of Albert Lea, for any purpose whatsoever, is hereby expressly prohibited without a written permit of the troop commander therefor.

6. All acts of vandalism, the purpose of which is to destroy or attempt to destroy or render ineffective property of any kind, are hereby prohibited.

7. All persons not residents of the City of Albert Lea having no legitimate business or reason for being within the City of Albert Lea shall forthwith depart from said city.

8. The stern necessity which confronts military forces engaged in the suppression of insurrection and riot will not permit certainty of discrimination between guilty participants and those mingled with them out of curiosity and who have no criminal intent; therefore, the only safe course for those who are not actually unlawfully participating is to abide at their homes and at all times refrain from visiting neighborhoods where there have been riotous assemblages and, in order that the innocent may be further protected, there will be no hesitation or vacillation in the prompt and decisive treatment of the guilty and those with them associated.

9. All daily newspapers published in the City of Albert Lea, and County of Freeborn, are hereby directed to publish this Proclamation in all issues of their respective papers for two successive days beginning December 11, 1959, and it is further directed that copies of this Proclamation be posted on two bulletin boards located in the entrances in the City Hall of Albert Lea and the Court House of the County of Freeborn forthwith.

10. Nothing in this proclamation contained shall be construed to permit the doing of any act or thing not expressly prohibited thereby.

11. It Shall Be Unlawful And Shall Be Construed To Be A Violation Of This

Proclamation, Subjecting The Offender To Punishment:

1. To perform or commit, or permit to be committed, any act obstructing or attempting to obstruct the military forces; to print, post or distribute or by any means publish or transmit within the said described area notices, bills, documents or newspapers, defaming the State of Minnesota or any member of the Minnesota National Guard in the field.

2. To circulate or to induce or attempt to induce one to circulate alarmist reports, or forge, alter or tamper with passes, permits or documents of any kind, issued by or pursuant to the direction of the Troop Commander. To refuse to comply with the requisition of the military forces of privately owned property, or to interfere or hinder another's compliance therewith.

3. To attempt to do any of the things in this order enumerated or to advise or assist any other person or persons to do so, or to attempt to do any of them.

4. To destroy, damage or secrete any ammunition, vehicles, supplies, food, food products or materials, useful to military forces, to foul or pollute any source of water supply; to do or procure the doing of damage to any bridge or railway or railway property or property within the operation of any railway or to destroy, damage or interfere with any telegraph, telephone, or other communication; or any water, light or power plant, or any part thereof or to any sewage disposal system.

5. To aid prisoners, or to render voluntary assistance to prisoners, or disobey any direction or order of any officer or soldier of any kind whatsoever acting in compliance with any direction or order of commissioned authority.

6. To carry arms or dangerous weapons of any nature with the intent to use the same in an unlawful manner. The carrying of arms or dangerous weapons shall be prima facie evidence of an intent to use the same unlawfully.

7. It is evident that danger to life, limb and property is occasioned by the operation of the Wilson and Co. Packing Plant under the present circumstances and that continued operation of said plant under such circumstances will continue to precipitate riots and other acts of violence, and in order to restore and preserve law and order in the community it is hereby ordered:

A. The operation of the Wilson and Co. Packing Plant is hereby suspended.

B. No persons or vehicles shall be permitted ingress or egress to the plant except as authorized by this headquarters.

C. No person shall loiter, congregate or assemble in the vicinity of the plant.

D. Orders issued by the troops of this headquarters regarding the preservation of law and order and in pursuance of this Proclamation shall be promptly obeyed.

12. The civil jurisdiction of all legally constituted courts of law in the jurisdiction concerned in this Proclamation shall continue to operate with full force and effect except that any and all court orders pertaining to the dispute between the Wilson Company Packing Plant at Albert Lea and the labor union representing the striking workers are hereby suspended and all courts shall be without jurisdiction to issue any further orders or decrees pertaining thereto until further order.

RICHARD COOK
Major General, Minn. ARNG
Commanding