BARTLETT AND COMPANY, GRAIN, a Missouri Corporation, Plaintiff,

v.

STATE CORPORATION COMMISSION OF KANSAS, William L. Mitchell, Chairman, Alvin F. Grauerholz and Harry G. Wiles, as Members of said Commission, and their respective successors in office, Defendants.

Civ. No. T-3289.

United States District Court
D. Kansas.

Nov. 26, 1963.

Erle Francis, Topeka, Kan., Charles B. Blackmar and James H. McLarney, of Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, Mo., for plaintiff.

Robert C. Londerholm, Topeka, Kan., for defendants.

Before HILL, Circuit Judge, and RIZLEY and TEMPLAR, District Judges.

TEMPLAR, District Judge.

On April 4, 1963, the plaintiff filed its complaint and in paragraph 9 thereof it is asserted:

> "Since injunction against state statutes and state administrative action is sought this case is required to be heard before a three-judge district court. 28 U.S.C. § 2281."

Because injunctive relief was sought against state statutes and against state administrative action Chief Judge Alfred P. Murrah was immediately notified and thereafter this Court was duly appointed, in accordance with 28 U.S.C. § 2284, to hear the cause.

The matter was heard on July 12, 1963, and thereafter briefs were filed in accordance with the direction of the Court. At the hearing, neither of the parties was certain that the case was one for three judges, and, therefore, we decided that we would first pass upon the question of our jurisdiction as a three-judge court.

28 U.S.C. § 2281 reads as follows:

> "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission

acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

The factual situation is succinctly stated in the Complaint. It reads:

"4. The plaintiff is engaged in the grain business. It purchases grain at numerous points in the State of Kansas and causes the grain so purchased to be shipped to an elevator known as the River Rail Terminal, which is located at the confluence of the Kansas and Missouri Rivers, in Wyandotte County, Kansas, for further shipment by rail or by barge to points outside the State of Kansas. All grain so purchased and transported to River Rail Terminal by truck is destined for shipment to points outside of the state of Kansas, and none of the said grain is resold or shipped to points inside the state of Kansas. Therefore, all such shipments are wholly in interstate commerce.

"5. The plaintiff in shipping grain from Kansas points to River Rail Terminal makes use of the services of various contract and common truck carriers. By the terms of the Motor Carrier Act, 49 U.S.C. §§ 301–327, vehicles owned and operated by such carriers while employed in transporting grain are exempt from regulation as to rates and as to authority, by the Interstate Commerce Commission, or otherwise, and plaintiff therefore is free to arrange for such transportation with any available carrier, at mutually satisfactory rates, and without the need for authority on the part of the carrier. The aforesaid provisions of the Motor Carrier Act show a positive intention on the part of Congress that there be no regulation of such transportation as to rates and authorities.

"6. The defendants have sought to impose upon the plaintiff and upon contract and common carriers, the scheme and program of regulation as prescribed by the laws of the state of Kansas. These laws provide that no common or contract carrier may transport grain for hire within the state of Kansas without authority from the defendant Kansas Corporation Commission, and at rates prescribed and approved by that commission. The defendants deny and refuse to recognize plaintiff's position that shipments in the manner described in this complaint are wholly interstate shipments. Unless restrained and enjoined by this Court, the defendants will interfere with plaintiff in the conduct of its business and with common and contract carriers employed by the plaintiff.

"8. The plaintiff is in competition with numerous elevators and facilities which are located on the Missouri side of the metropolitan area of Greater Kansas City. The defendants have not attempted to regulate shipments to these competitors. Rates prescribed by the defendant Commission are substantially higher than are the rates which can be negotiated in the absence of control. The plaintiff therefore will suffer irreparable damage if forced to pay rates in excess of those paid by its competitor. The plaintiff, moreover, will be unable to obtain the services of common and contract carriers. The Interstate Commerce Commission has no jurisdiction over the defendants and no power to grant any relief to the plaintiff in the premises."

The Complaint then alleges:

"The * * * statutes of the state of Kansas cannot constitutionally be applied to the business of the plaintiff as described in this complaint, for the following reasons:

"(a) Such statutes (primarily Kan.G.S.1949, 66–1,107 through 66–1,118) purport to regulate inter-

state commerce in addition to intrastate commerce, and therefore are in excess of the power of the state by reason of Article I, Section 8, Paragraph 3 of the Constitution of the United States which gives Congress the sole and exclusive power to regulate interstate commerce.

"(b) Congress by enacting the Motor Carrier Act has pre-empted and occupied the field of interstate transportation of grain by truck, and any state statutes and regulations in the field are therefore unconstitutional by reason of Article VI, Paragraph 2, of the Constitution of the United States, commonly known as the 'Supremacy Clause.'

"Plaintiffs pray that the Court:

"(a) Find and declare that the shipments of grain from points in Kansas to River Rail Terminal for shipment to points outside the state, constitute interstate commerce and as such are free from regulation by the State of Kansas as to rates and authority;

"(b) Find and declare that the defendants have no jurisdiction as to rates and authority over such shipments by truck; and

"(c) Enter temporary and permanent injunctions restraining and enjoining the defendants from attempting to exercise jurisdiction and regulate such shipments of grain."

The defendants have answered the Complaint, asserting that the shipments in question are not shipments in interstate commerce, and for this reason they have authority to prescribe the rates.

The parties have stipulated that the question for decision is whether the truck shipments of grain "from Kansas points over highways wholly within the State of Kansas to Kansas City, Kansas, are intra-state shipments subject to the jurisdiction of the Kansas Corporation Commission or are rendered interstate in character by reason of subsequent inter-

state shipment of the grain from Kansas City, Kansas to points in states other than the State of Kansas."

However, the first question we will consider is whether or not the dispute is required to be heard in accordance with 28 U.S.C. § 2281.

■■ The purpose of Section 2281 is to provide procedural protection against an improvident invalidation of a state's legislative policy by a single federal judge. Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800; Jacobs v. Tawes, 4 Cir., 250 F.2d 611; Division 1287, Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of America, A.F.L.-C.I.O. v. Dalton, 206 F.Supp. 625 (W.D.Mo.1961). In other words, its purpose is to protect state sovereignty. Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 69 S.Ct. 606, 93 L.Ed. 741. The statute is not to be viewed "as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such." Kesler v. Department of Public Safety, 369 U.S. 153, 156, 82 S.Ct. 807, 810, 7 L.Ed.2d 641. In short, the grant of jurisdiction to a statutory three-judge court should be closely construed to the end that only those cases which plainly fall in the class therein described may be referred to such a court. Marshall v. Sawyer, 9 Cir., 301 F.2d 639; Moss v. Hornig, 214 F.Supp. 324 (D. Conn.1962), aff'd., 2 Cir., 314 F.2d 89; Eastern Freight-Ways, Inc. v. United States, 170 F.Supp. 848 (D.N.J.1959.)

■ It has been said that "the principles in regard to the convening of a court of three judges have been clearly stated but are not too simple in application." Webb v. State University of New York, 120 F.Supp. 554 (N.D.N.Y.1954), appeal dismissed, 348 U.S. 867, 75 S.Ct. 113, 99 L.Ed. 683. The "clearly stated" principles or prerequisites under § 2281 are as follows:

(1) An interlocutory or permanent injunction must be sought;

(2) The injunction sought must be one to restrain the action of a

state officer or administrative agency;

(3) The action sought to be enjoined must consist of the enforcement or execution of a state statute, and,

(4) The injunction must be sought on the ground that the state statute is unconstitutional.

In addition, it has generally been held that a disputed substantial federal question on constitutional grounds must be presented or a three-judge court has no jurisdiction. See, e. g., Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512; Haines v. Castle, 7 Cir., 226 F.2d 591, cert. denied, 350 U.S. 1014, 76 S.Ct. 660, 100 L.Ed. 874; Booker v. State of Tennessee Board of Education, 6 Cir., 240 F.2d 689, cert. denied, 353 U.S. 965, 77 S.Ct. 1050, 1 L.Ed.2d 915; German v. South Carolina State Ports Authority, 4 Cir., 295 F.2d 491. However, if a disputed substantial federal question is presented and the other prerequisites exist, a three-judge court is required. Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821; United States v. Georgia Public Service Commission, 371 U.S. 285, 83 S.Ct. 397, 9 L.Ed.2d 317; Butler v. Thompson, 4 Cir., 184 F.2d 526, aff'd, 341 U.S. 937, 71 S.Ct. 1002, 95 L.Ed. 1365.

The first three conditions are clearly present in this case. The only questions are whether plaintiff seeks an injunction on the ground of the unconstitutionality of a state statute and whether a disputed substantial question is presented. In this connection, the complaint alleges that the Kansas statutes "cannot constitutionally be *applied* to" plaintiff's business because: (a) Such statutes purport to regulate interstate commerce and, therefore, are in excess of a state's power under Article 1, Section 8, Paragraph 3 of the Constitution, which gives Congress exclusive power to regulate interstate commerce; and (b) by enacting the Motor Carrier Act, Congress has pre-empted and occupied the field of interstate commerce of grain by truck and, therefore, the state statutes and regulations in that field are unconstitutional by virtue of Article VI, Paragraph 2 of the Constitution, commonly known as the Supremacy Clause.

As to (b), it has been held that the three-judge court requirement does not apply in cases where an injunction is sought against state administrative action solely on the ground that federal legislation has pre-empted the field. See, e. g., Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754; Case v. Bowles, 327 U.S. 92, 97, 66 S.Ct. 438, 90 L.Ed. 552 (1946); and Borden Company v. Liddy, supra, 8 Cir., 309 F. 2d 871, at 874, and cases therein cited. In considering the "Supremacy Clause" assertion, the Court has considered this in the case of Kesler v. Department of Public Safety, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962). In the Kesler case, the plaintiff asserted that the federal Bankruptcy Act pre-empted Utah's financial responsibility law, and requested an injunction against the enforcement of the state statute. The Supreme Court, in holding that a three-judge court was properly convened, stated at 369 U.S. page 156, at 82 S.Ct. page 810, 7 L.Ed. 2d 641:

"* * * It would seem to be compellingly clear that this case falls within § 2281 of Title 28 of the United States Code, which bars a suit for an injunction 'upon the ground of the unconstitutionality' of a state statute 'unless the application therefor is heard and determined by a district court of three judges.' This was so heard and appeal was properly brought directly here, unless invalidation of a state statute by virtue of the Supremacy Clause rests on a different constitutional basis than such invalidation because of conflict with any other clause of the Constitution, at least to the extent of reading such an implied exception into the procedure devised by § 2281. Neither the language of § 2281 nor the purpose which gave rise to it affords the remotest reason for carving out an unfrivolous claim of unconstitutionality because of the Su-

premacy Clause from the comprehensive language of § 2281."

The ruling of the Kesler case would seem at first glance to compel a holding in the case at bar that a three-judge court should consider the character of the truck shipments of the grain. The case would seem to expand the jurisdiction of three-judge courts because previous cases had held that if the only constitutional argument is that of the Supremacy Clause, a three-judge court could not be convened. However, in the Kesler case the constitutional issue was sole and immediate; there was a direct conflict between a federal and a state statute. There was an immediate need for convening a three-judge court to determine the resultant constitutional issue.

■ In the instant case, it is apparent the Court has to make a determination on the character of truck shipments of grain as a matter of fact before reaching any constitutional issues. We think this fact distinguishes the case at bar from the Kesler case. The only application of the Kesler case to the situation at hand is the proposition that the jurisdiction of the three-judge court must be determined independently and not confused with an ultimate conclusion on the merits.

■ This Court does not think that a three-judge court can be convened under the allegations of paragraph (b).

Paragraph (a), however, presents a more difficult question. If the language of paragraph (a) is a direct attack upon the constitutionality of the state statutes, it would appear that a three-judge court is necessary.

In the case of Query v. United States, 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616, the United States and two Army officers brought a suit to restrain the enforcement of a state tax on the purchase and sale of goods at Army Post Exchanges, upon the ground that such Exchanges were federal instrumentalities and that, therefore, the state statute imposing the tax as applied to them would be unconstitutional. The tax would not be unconstitutional as applied to private concerns in the state, as the statute in the case at bar would not be unconstitutional as applied to shipments and carriers operating in intra-state commerce.

The Supreme Court, in ruling that a three-judge court was necessary and proper, set out the following:

"But the complainants sought to restrain the state officers from enforcing the state statute upon the ground of the unconstitutionality of the threatened application. Not only was unconstitutionality the ground asserted by the complaints for the relief sought, but it appears that the relief awarded was predicated on the same ground."

And it was also said:

"Here a substantial charge has been made that a state statute, as applied to the complainants, violates the Constitution. Under such circumstances, we have held that relief in the form of an injunction can be afforded only by a three-judge court * * *."

In the case of Florida Lime and Avocado Growers v. Jacobsen, (1959) 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568, the plaintiffs were seeking an injunction against the Director of the Department of Agriculture of California to restrain him from enforcing a statute which prohibited the importation or sale in California of avocados containing less than 8% of oil by weight. The Supreme Court held that, since the complaint sought an injunction against enforcement of the state statute on grounds of federal unconstitutionality, the case should be heard by three judges, notwithstanding the fact the complaint also alleged that the state statute conflicted with the Federal Act. The Court said:

"Indeed, the cases since 1925 have continued to maintain the view that if the constitutional claim against the state statute is substantial, a three-judge court is required to be convened and has jurisdiction, as do we on direct appeal, over all grounds of attack against the statute."

The scope of three-judge court jurisdiction must be balanced between the literal congressional mandate on the one hand and the apparent and needed limitations placed on the statute by judicial interpretations on the other hand. From the cases a general proposition may be stated, and perhaps this general proposition may be best stated by quoting the annotation at 46 L.Ed.2d, 1931 at 1934–1935, wherein it is said:

"A distinction has been made between a direct attack on the constitutionality of a statute, which requires for disposition a three-judge court, and an attack on the unconstitutionality of the result obtained by the use of a statute which may be disposed of by a single judge. This distinction is sometimes difficult to apply to the facts of an individual case. The line of demarcation seems twofold: (1) a three-judge court is required only where the plaintiff attacks the unconstitutionality of the statute, and is not required where the attack itself is limited to the unconstitutional result reached: (2) a three-judge court is not required where the statute is susceptible of a construction and application which does not violate the Federal Constitution, and is only misconstrued or erroneously applied in an individual case, but a three-judge court is required where the statute is not susceptible of a construction which does not violate the Federal Constitution."

The case of Case v. Bowles, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552, illustrates the application of the general rules stated in the annotation. The Supreme Court, in holding that a three-judge court was not required, stated (327 U.S. at 97, 66 S.Ct. at 441, 90 L.Ed. 552):

" * * * The State contends further that this case should have been tried by a district court composed of three judges because § 266 of the Judicial Code [28 U.S.C.A. § 380] requires such a proceeding whenever enforcement of a state statute is sought to be enjoined on the ground that the statute is unconstitutional. But here the complaint did not challenge the constitutionality of the state statute but alleged merely that its enforcement would violate the Emergency Price Control Act. Consequently a three-judge court is not required. * * * "

Before reaching a final determination on whether or not the allegations of paragraph (a) are a direct attack upon the constitutionality of the state statutes, the Kansas statutes should be considered.

First, the Kansas legislature gave the Corporation Commission the power and authority to regulate and the power and authority to prescribe the rates to be collected by contract motor carriers. (G.S. 1949, 66–1,112a and 66–1,112f.) The legislature recognized that there was a distinction to be made between the carriers by requiring public carriers of intrastate commerce to secure certificates in order to operate (66–1,114) and by imposing certain requirements upon common carriers in interstate commerce. (66–1,116.) Specifically, G.S.1949, 66–1,116 provides:

"It shall be unlawful for a public motor carrier of property or of passengers, a contract motor carrier of property or of passengers, or a private motor carrier of property, to operate in interstate commerce within this state without having furnished the corporation commission, in writing, full information concerning: (a) The ownership, financial condition and equipment to be used and the physical property of the applicant; (b) the complete route over which the applicant desires to operate; (c) the proposed rates, schedule or schedules, and/or time cards of the carrier; (d) such other information as the commission may request covering observance of state police regulations and the payments of the fees for the use of the highways, and upon receipt of such information and the payments of fees the commission may issue such interstate carrier a license: *Provided, That*

*this act shall apply to all persons and motor vehicles engaged in interstate commerce only to the extent permitted by the constitution and laws of the United States."* (Emphasis supplied.)

 It is clear that the State of Kansas recognized the limitations on its authority to regulate in this area and it is equally clear that the Kansas statute is not unconstitutional, nor is it attacked as being unconstitutional. Without question, where it is possible to enjoin state officials from unlawfully applying the provisions of a state legislative enactment, otherwise valid, a three-judge court is not required, if it appears—as here—that the officials are administering a constitutional statute in a manner that produces an unconstitutional result. Phillips v. United States, supra; Wilson & Co. v. Freeman, D.C.Minn., 1959, 179 F. Supp. 520; Aaron v. Cooper, 8 Cir. 1958, 261 F.2d 97; Faubus v. United States, 1958, 254 F.2d 797, cert. den. 358 U.S. 829, 79 S.Ct. 49, 3 L.Ed.2d 68; Penagaricano v. Allen Corp., 1 Cir. 1959, 267 F.2d 550.

It is readily apparent that in determining whether a three-judge court is required in a particular case, great emphasis is placed on the wording and allegations of the complaint. At first glance, it would appear from the above quoted allegations of the complaint in this case that plaintiff is making an attack upon the Kansas statutes on the basis of the unconstitutionality of such statutes as applied to it. However, when the complaint is viewed as a whole, and especially the relief sought, it is anything but clear that plaintiff is making a direct attack upon the statutes on constitutional grounds. Certainly, there is no prayer seeking to have the statutes declared unconstitutional. When this is considered together with the stipulated question, it would seem that what is involved in this action is simply a factual determination as to whether the shipments of grain by truck are interstate or intrastate commerce. Obviously, the statutes in question can be construed in such a manner

that they do not violate the Federal Constitution. In other words, it would appear that the real question presented, is not whether the Kansas statutes are constitutional, but rather, are the shipments of grain, as a matter of fact, interstate or intrastate commerce. If the former, the state may not regulate them and if the latter, it may do so.

In conclusion, it is the decision of this Court that this is not a proper case for a three-judge court in view of the relief sought by the complaint and the question presented under the stipulation entered into by the parties. This is especially true, when the case is considered in the light of the purpose of the statute and its limited application or strict construction.

It is therefore ordered and adjudged that this Three-Judge Court, convened by order of the Chief Judge of this Circuit dated April 11, 1963, be dissolved, and pursuant to the stipulation of the parties, it is directed that this cause be determined by a single judge of this judicial district upon the record of the case.