## PHILLIPS, GOVERNOR OF OKLAHOMA, ET AL. *v.* UNITED STATES ET AL.

No. 201.   Argued January 15, 1941.—Decided February 3, 1941.

*Messrs. John B. Dudley* and *Randell S. Cobb,* First Assistant Attorney General of Oklahoma, with whom *Messrs. Mac Q. Williamson,* Attorney General, *George S. Ramsey, Duke Duvall, Villard Martin,* and *Thomas Garrett Logan* were on the brief, for appellants.

*Assistant Attorney General Shea,* with whom *Solicitor General Biddle* and *Messrs. Melvin H. Siegel, Sidney J. Kaplan, Frederick Bernays Wiener, Richard H. Demuth, Alan Johnstone,* and *Charlie C. McCall* were on the brief, for the United States.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

As part of a flood control and hydro-electric development, the Grand River Dam Authority, an agency of the State of Oklahoma, was empowered to construct the Grand River Dam, with authority to borrow money and accept grants from the United States. Oklahoma Laws of 1935, Art. 4, c. 70. For the construction of the dam the United States allotted twenty million dollars to the Authority. Eight and one-half millions, in round numbers, were to be used as a grant, and eleven and one-half for the bonds of the Authority. Construction began in

February, 1938, and by the spring of last year much of the work was nearing completion. During this period, the Governor of Oklahoma unsuccessfully pressed against the Authority claims for the flooding of roads within the dam area. The action which the Governor finally took to enforce his own views in this matter is the source of the present litigation. On March 13, 1940, he declared martial law in an area surrounding part of the dam-site and ordered the Adjutant General of the state to occupy it. The following day the Governor in conjunction with other state officials obtained an *ex parte* order in a state court restraining further work on the dam by the Authority. Thereupon the United States began the present suit in a federal district court. A temporary order was issued against the Governor and the other officials restraining them from interference with the Grand River project by further prosecution of their suit in the state court and by the use of military force. Deeming the suit to be one arising under § 266 of the Judicial Code as amended, 28 U. S. C. § 380, a district court of three judges was convened which, after hearing, entered an interlocutory injunction in the terms of the temporary restraining order. This is the decree that is now before us.

But unless § 266 required the present suit to be heard by three judges, under the Jurisdictional Act of 1925 we are without authority to entertain this direct appeal from a district court. § 238 of the Judicial Code as amended, 28 U. S. C. § 345. Having concluded that there is a fatal bar to our entertaining the appeal, we are without power to consider the other issues that were argued here.

By § 266, which is set forth in the margin,[1] Congress provided an exceptional procedure for a well-understood

---

[1] Judicial Code § 266, as amended, 28 U. S. C. § 380:

"No interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a State by

type of controversy. The legislation was designed to secure the public interest in "a limited class of cases of special importance." *Ex parte Collins,* 277 U. S. 565, 567.

restraining the action of any officer of such State in the enforcement or execution of such statute or in the enforcement or execution of an order made by an administrative board or commission acting under and pursuant to the statutes of such State, shall be issued or granted by any justice of the Supreme Court, or by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, upon the ground of the unconstitutionality of such statute, unless the application for the same shall be presented to a justice of the Supreme Court of the United States, or to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a justice of the Supreme Court or a circuit judge, and the other two may be either circuit or district judges, and unless a majority of said three judges shall concur in granting such application. Whenever such application as aforesaid is presented to a justice of the Supreme Court, or to a judge, he shall immediately call to his assistance to hear and determine the application two other judges: *Provided, however,* That one of such three judges shall be a justice of the Supreme Court, or a circuit judge. Said application shall not be heard or determined before at least five days' notice of the hearing has been given to the governor and to the attorney general of the State; and to such other persons as may be defendants in the suit: *Provided,* That if of opinion that irreparable loss or damage would result to the complainant unless a temporary restraining order is granted, any justice of the Supreme Court, or any circuit or district judge, may grant such temporary restraining order at any time before such hearing and determination of the application for an interlocutory injunction, but such temporary restraining order shall remain in force only until the hearing and determination of the application for an interlocutory injunction upon notice as aforesaid. The hearing upon such application for an interlocutory injunction shall be given precedence and shall be in every way expedited and be assigned for a hearing at the earliest practicable day after the expiration of the notice hereinbefore provided for. An appeal may be taken direct to the Supreme Court of the United States from the order granting or denying, after notice and hearing, an interlocutory injunction in such case. It is further provided that if before the

It is a matter of history that this procedural device was a means of protecting the increasing body of state legislation regulating economic enterprise from invalidation by a conventional suit in equity. While Congress thus sought to assure more weight and greater deliberation by not leaving the fate of such litigation to a single judge, it was no less mindful that the requirement of three judges, of whom one must be a Justice of this Court or a circuit judge, entails a serious drain upon the federal judicial system particularly in regions where, despite modern facilities, distance still plays an important part in the effective administration of justice. And all but the few great metropolitan areas are such regions. Moreover, inasmuch as this procedure also brings direct review of a district court to this Court, any loose construction of the requirements of § 266 would defeat the purposes of Congress, as expressed by the Jurisdictional Act of February 13, 1925, to keep within narrow confines our appellate docket. *Moore* v. *Fidelity & Deposit Co.*, 272 U. S. 317, 321. The history of § 266 (see Pogue, State Determination of State Law, 41 Harv. L. Rev. 623, and Hutcheson, A Case for Three Judges, 47 Harv. L. Rev. 795), the nar-

---

final hearing of such application a suit shall have been brought in a court of the State having jurisdiction thereof under the laws of such State, to enforce such statute or order, accompanied by a stay in such State court of proceedings under such statute or order pending the determination of such suit by such State court, all proceedings in any court of the United States to restrain the execution of such statute or order shall be stayed pending the final determination of such suit in the courts of the State. Such stay may be vacated upon proof made after hearing, and notice of ten days served upon the attorney general of the State, that the suit in the State courts is not being prosecuted with diligence and good faith. The requirement respecting the presence of three judges shall also apply to the final hearing in such suit in the district court; and a direct appeal to the Supreme Court may be taken from a final decree granting or denying a permanent injunction in such suit."

rowness of its original scope, the piece-meal explicit amendments which were made to it (see Act of March 4, 1913, 37 Stat. 1013, and Act of February 13, 1925, 43 Stat. 936, amending § 238 of the Judicial Code), the close construction given the section in obedience to Congressional policy (see, for instance, *Moore* v. *Fidelity & Deposit Co., supra; Smith* v. *Wilson,* 273 U. S. 388; *Ex parte Collins, supra; Oklahoma Gas Co.* v. *Packing Co.,* 292 U. S. 386; *Ex parte Williams,* 277 U. S. 267; *Ex parte Public National Bank,* 278 U. S. 101; *Rorick* v. *Board of Comm'rs,* 307 U. S. 208; *Ex parte Bransford,* 310 U. S. 354), combine to reveal § 266 not as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such.

To bring this procedural device into play—to dislocate the normal operations of the system of lower federal courts and thereafter to come directly to this Court—requires a suit which seeks to interpose the Constitution against enforcement of a state policy, whether such policy is defined in a state constitution or in an ordinary statute or through the delegated legislation of an "administrative board or commission." The crux of the business is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy. This was the aim of Congress and this is the reconciling principle of the cases.

To the test of this principle must be put the argument that the present case is within § 266.

The Oklahoma constitution has the customary provisions pertaining to the powers of a governor. In him is lodged "The Supreme Executive power," he is "Commander-in-Chief of the militia of the State" and he "shall cause the laws of the State to be faithfully executed." Constitution of Oklahoma, Article VI, §§ 2, 6, 8. Defining with particularity these powers, an Oklahoma statute

"authorized and required" its Governor to call out the national guard in case of war or similar contingencies including "any forcible obstructing of the execution of the laws or reasonable apprehension thereof, and at all other times he may deem necessary . . ." Oklahoma Statutes, 1931, § 4989; Okla. Stat. Ann. Title 44, § 66. In its complaint the United States did not impugn the validity of these Oklahoma provisions. But the Governor justified his declaration of martial law under their authority, and since his action is deemed a lawless interference with the Government's constitutional rights, the suit is claimed to be an "application for" an "interlocutory injunction . . . restraining the enforcement, operation, or execution of" a "statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute . . . upon the ground of the unconstitutionality of such statute."

The claim proves too much. Probably most of the actions of governors trace back to the common provision charging them with taking care that the laws be faithfully executed. Some constitutional or statutory provision is the ultimate source of all actions by state officials. But an attack on lawless exercise of authority in a particular case is not an attack upon the constitutionality of a statute conferring the authority even though a misreading of the statute is invoked as justification. At least not within the Congressional scheme of § 266. It is significant that the United States in its complaint did not charge the enabling acts of Oklahoma with unconstitutionality, but assailed merely the Governor's action as exceeding the bounds of law. In other words, it seeks a restraint not of a statute but of an executive action. But the enforcement of a "statute," within the meaning of § 266, is not sought to be enjoined merely because a state official seeks shelter under it by way of defense against a charge of lawlessness. As Mr. Justice

Cardozo said of a related problem affecting the business of the federal courts, "we do not travel back so far." *Gully* v. *First National Bank,* 299 U. S. 109, 116.

On its face, § 266 precludes a reading which would bring within its scope every suit to restrain the conduct of a state official whenever, in the ultimate reaches of litigation, some enactment may be said to authorize the questioned conduct. The special procedure only attends "the application for" an interlocutory injunction restraining enforcement of a statute. In other words, the complainant must seek to forestall the demands of some general state policy, the validity of which he challenges. No one questions Oklahoma's authority to give her Governor "Supreme Executive power" nor to make him Commander-in-Chief of her militia. What is here challenged is a single, unique exercise of these prerogatives of his office. This view is reinforced by the proviso added to § 266 by the Act of March 4, 1913, 37 Stat. 1013, whereby suit in a federal court against the enforcement of a statute can be stayed if appropriate provision is made for testing its validity in the state courts. Of course, a suit cannot be brought in the court of a state to enforce a governor's declaration of martial law. In short, this is not a case for which the procedural structure of § 266 was devised. If the Governor's action is subject to restraint in the District Court, the procedural road to be taken is the normal course of litigation in a federal district court and not the short cut of § 266.

*Sterling* v. *Constantin,* 287 U. S. 378, which is invoked as a precedent, was a very different case. There martial law was employed in support of an order of the Texas Railroad Commission limiting production of oil in the East Texas field. The Governor was sought to be restrained as part of the main objective to enjoin "the execution of an order made by an administrative . . . . commission," and as such was indubitably within § 266.

Compare *Railroad Commission* v. *Rowan & Nichols Oil Co.*, 311 U. S. 570, and *Railroad Commission* v. *Humble Oil & Refining Co.*, 311 U. S. 578.

Had a timely appeal been taken to the circuit court of appeals the decree below could have been reviewed there, though rendered by three judges. *Healy* v. *Ratta*, 289 U. S. 701; 67 F. 2d 554; 292 U. S. 263. While this Court cannot hear the merits, it will, where the question of jurisdiction was not obviously settled by prior decisions, enforce the limitations of § 266 by an order framed to save appellants their proper remedies. *Oklahoma Gas Co.* v. *Packing Co.*, 292 U. S. 386, 392. We therefore vacate the decree and remand the cause to the court which heard the case so that it may enter a fresh decree from which appellants may, if they wish, perfect a timely appeal to the circuit court of appeals.

*Decree vacated.*