**J. W. WALKER et al.**

v.

**CITY OF HOUSTON et al.**

**Civ. A. No. 69 H 168.**

United States District Court,
S. D. Texas,
Houston Division.

Feb. 12, 1971.

See also, D.C., 341 F.Supp. 1124.

Kermitt L. Waters, Sam Wilson, Houston, Tex., for plaintiffs.

F. William Colburn, Houston, Harvey L. Hardy, San Antonio, Ted P. MacMaster, Dallas, Tex., Malcolm L. Quick, Asst. Atty. Gen. of Tex., Austin, Wade Adkins, El Paso, Tex., for defendants.

Before INGRAHAM, Circuit Judge, and SEALS and COX, District Judges.

## MEMORANDUM AND ORDER

SEALS, District Judge:

By this class action plaintiffs seek to have the court declare unconstitutional Vernon's Texas Revised Civil Statutes Annotated Articles 6243g–1 and/or 6243g–1 section 15, 6243e, 6243a, 6243f section 19, and 6243b; to enter a temporary and a permanent injunction against the enforcement of these statutes; to enjoin the enforcement of the judgments of the courts of the State of Texas insofar as they apply to the construction or enforcement of these statutes; and to order an accounting and refunding of all funds deducted from plaintiffs' salaries and withheld from plaintiffs pursuant to the provisions of these statutes.

The statutes in question concern the creation and administration of the Police Officers' Pension Fund of the City of Houston, Texas, the Firemen's Relief & Retirement Fund of Houston, Texas, the Firemen, Policemen and Fire Alarm Operators' Pension Fund of Dallas, Texas, the Firemen & Policemen's Pension Fund of San Antonio, Texas, and the Firemen, Policemen and Fire Alarm Operators' Pension Fund of El Paso, Texas.

Each of the plaintiffs in this case is a former member of one of these pension funds by reason of his previous employment as a fireman, policeman or fire alarm operator in Houston, Dallas, San Antonio, or El Paso. The statutes under attack provide that these pension systems are to be funded, in part, by employee contributions obtained by means of monthly salary deductions. The gravamen of plaintiffs' complaint is that these statutes prohibit the refunding of an employee's contributions into his pension fund if his employment relationship is terminated prior to his qualifying for pension benefits. Plaintiffs assert that this constitutes deprivation of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Because firemen and policemen of other cities within the State of Texas are not required to suffer forfeiture of their contributions upon termination of employment and because other city and state employees are not required to forfeit their contributions to similar pension funds even within Houston, Dallas, San Antonio and El Paso, plaintiffs also contend that they are being discriminated against and are being denied equal protection of the laws under the Fourteenth Amendment. Further constitutional arguments urged are that these salary withholdings constitute taking of property without just compensation and that the statutory provisions for this withholding are Bills of Attainder.

Plaintiffs allege that jurisdiction is founded upon 28 U.S.C. section 1331(a), 42 U.S.C. section 1983 and 28 U.S.C. section 1343(3).

Plaintiffs have requested that a three-judge court be convened pursuant to 28 U.S.C. section 2281. The defendants have moved to deny the appointment of the three-judge court and to dismiss on the grounds that (1) the court lacks jurisdiction over the subject matter, (2) the complaint does not raise a substantial federal question, (3) process and service of process is insufficient; the complaint fails to state a claim upon which relief can be granted, and (4)

this case cannot appropriately be maintained as a class action. The defendants have also objected to venue insofar as the Dallas, San Antonio and El Paso funds are involved. This Memorandum and Order pertains only to the three-judge court issue. The other motions will be ruled upon in a subsequent Memorandum and Order.

Although the court harbored serious reservations concerning the propriety of a three-judge court in this case, in light of Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968), the designation of the three-judge court was requested. This panel was so designated on March 7, 1969, in an order by Chief Judge John R. Brown which provided, among other things, that:

> This designation and composition of the three-judge court is not a prejudgment, express or implied, as to whether this is properly a case for a three-Judge rather than a one-Judge court. This is a matter best determined by the three-Judge court as this enables a simultaneous appeal to the Court of Appeals and to the Supreme Court without the delay, awkwardness, and administrative insufficiency of a proceeding by way of mandamus from either the Court of Appeals, the Supreme Court or both, directed against the Chief Judge of the Circuit, the presiding District Judge, or both.

Congress has provided for a special three-judge district court to supplant the single-judge district court in certain situations involving matters of overriding public importance. Such a situation is where a party seeks an injunction in a federal district court against the enforcement, operation or execution of a state statute by restraining a state officer in the enforcement or execution of the statute on the ground that the statute is invalid under the United States Constitution. In these cases, 28 U.S.C. section 2281 requires that the case be heard by the special three-judge court. Plaintiffs assert that this case presents such a situation.

Section 2281 of the Judicial Code represents a strict procedural device which confers no additional federal jurisdiction. Ex Parte Poresky, 290 U. S. 30, 31, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Van Buskirk v. Wilkinson, 216 F.2d 735, 737 (9th Cir. 1954). The Supreme Court, concerned with the heavy burden which the special three-judge court supposedly imposes upon the federal judiciary, has expressly adopted a policy of strict construction of section 2281. This policy was originally announced by Mr. Justice Frankfurter in Phillips v. United States, 312 U.S. 246, 250–251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941) wherein he stated:

> The history of § 266 [28 U.S.C. § 2281], the narrowness of its original scope, the piecemeal explicit amendments which were made to it, the close construction given the section in obedience to Congressional policy, combine to reveal § 266 [§ 2281] not as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such.

See also Kesler v. Dep't of Public Safety, 369 U.S. 153, 156–157, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962); Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 92–93, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960) (dissent); Pague, State Determination of State Law, 41 Harv.L. Rev. 623 (1927); comment, The Three Judge Rule, 38 Yale L.J. 955 (1928).

Mr. Justice Brandeis stated in Ex parte Collins, 277 U.S. 565, 567–569, 48 S.Ct. 585, 586, 72 L.Ed. 990 (1928) that this section "was intended to embrace a limited class of cases of special importance and requiring special treatment in the interest of the public . . . ." and was intended to apply only "to cases of unusual gravity . . . ." It is in light of this policy of strict construction that the three-judge complaint filed in this case must be examined.

Unfortunately, the somewhat turbid history of section 2281 has shrouded the statute with many interpretive problems. Although the Supreme Court has generally followed Mr. Justice Frankfurter's statement in *Phillips* that "the crux of

the business is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy" (312 U.S. at 251, 61 S.Ct. at 483), the limitations on section 2281 are not easily ascertained.

The propriety of a three-judge court in the present case rests upon the resolution of two questions: (1) whether any of the Texas statutes under attack are "state statutes" within the restrictive meaning of section 2281; and (2) whether any of the persons sought to be enjoined from enforcing or executing such statutes are "state officers" under this section. The United States Supreme Court was presented these two questions in Moody v. Flowers, 387 U.S. 97, 101, 87 S.Ct. 1544, 1548, 18 L.Ed.2d 643 (1967). In that case Mr. Justice Douglas, reviewing the Court's long history of curtailing the applicability of section 2281, stated:

> The Court has consistently construed the section as authorizing a three-judge court not merely because a state statute is involved but only when a state statute of general and statewide application is sought to be enjoined. The term "statute" in § 2281 does not encompass local ordinances or resolutions. The officer sought to be enjoined must be a state officer; a three-judge court need not be convened where the action seeks to enjoin a local officer unless he is functioning pursuant to a statewide policy and performing a state function. Nor does the section come into operation where an action is brought against state officers performing matters of purely local concern. And, the requirement that the action seek to enjoin a state officer cannot be circumvented "by joining, as nominal parties defendant, state officers whose action is not the effective means of the enforcement or execution of the challenged statute."

(Citations omitted.)

Also excluded are local laws passed under state enabling acts [Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990 (1928); Teeval Co. v. New York, 88

F.Supp. 652 (S.D.N.Y.1950); James v. Duckworth, 170 F.Supp. 342, 351 (E.D. Va.), aff'd, 267 F.2d 224 (4th Cir.), cert. den. 361 U.S. 835, 80 S.Ct. 88, 4 L. Ed.2d 76 (1959)], state departmental regulations [(Sweeney v. State Board of Public Assistance, 36 F.Supp. 171, 172 (M.D.Pa.1940), aff'd per curiam, 119 F. 2d 1023 (3d Cir.), cert. den., 314 U.S. 611, 62 S.Ct. 74, 86 L.Ed. 491 (1941)] and the laws of a territory [Stainback v. Mo. Hock Ke Lok Po, 336 U.S. 368, 68 S.Ct. 606, 93 L.Ed. 741 (1949)]. Thus, the Supreme Court has held that a single judge court was sufficient to consider the constitutionality of an Alabama statute dealing with the apportionment and districting of the governing board of one county, Moody v. Flowers, 387 U. S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1966), and a Florida statute relating solely to land in the Everglades Drainage District, Rorick v. Bd. of Comm'rs, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242 (1939).

But the exclusion from section 2281 has apparently not been limited to cases concerning state statutes that apply to only a particular municipality or locality within the state. In Ex parte Public Nat'l Bank, 278 U.S. 101, 49 S.Ct. 43, 73 L.Ed. 202 (1928), the Court held that three judges were not required to hear a case challenging a New York statute providing for a statewide tax on national bank stock because the taxes collected were for the sole use and benefit of New York City. The Public Nat'l Bank case seems to carve from section 2281 those cases where an injunction is sought against local officials, although enforcing a statute applicable throughout the state, when the activities of these officials relate to only a particular part of the state.

The Supreme Court may have created an even broader exclusion from section 2281: the three-judge court may be unnecessary even though an injunction is sought against the enforcement of a state statute representing a statewide policy, if the enforcement of this statute is of immediate benefit or concern to only a particular part of the state. In

Wilentz v. Sovereign Comp., 306 U.S. 573, 59 S.Ct. 709, 83 L.Ed. 994 (1938) the Court held that three judges were not needed to test a New Jersey statute which provided a scheme for the control and management of the affairs of any municipality unable to meet its financial obligations when due. Even though the defendants were carrying out a statute of state-wide applicability, the Supreme Court reasoned that in the particular suit the defendants were performing only local, not state, functions. And in Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990 (1928), the Court held that section 2281 did not apply to a case testing an Arizona statute which authorized cities to assess street improvement costs against abutting property where the action would merely delay the completion of a municipal improvement. Again, the statute involved was of state-wide applicability; but the outcome of the particular case was of the immediate concern of only the particular municipality. *See also*, Griffin v. County School Bd., 377 U.S. 218, 84 S.Ct. 1226, 12 L. Ed.2d 256 (1964); Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935).

Any extension of the exclusion to section 2281 applicability beyond the state-wide policy requirement would seemly ignore the purpose of section 2281 and the importance of the challenged legislation. However, *Public Nat'l Bank, Wilentz,* and *Collins* clearly represent extensions beyond the state-wide requirement.

The plaintiffs in the present case assert that a three-judge court is required because each of the statutes under attack (Arts. 6243g–1, 6243e, 6243a, 6243f, 6243b) is of state-wide applicability. However, none of the pension trusts involved in this suit were organized and none are administered under the same statute: the Houston Policemen's fund falls under Art. 6243g–1; the Houston firemen's fund falls under Art. 6243e; the Dallas police and firemen and fire alarm operators fund falls under Art. 6243a; the San Antonio fund falls under 6243f; and the El Paso fund falls under 6243g. And it appears, by reason of the population range within which a city must fall in order to qualify under each of these statutes, that none of these statutes presently applies to any other city than the city named. (See the chart in the Appendix to this Memorandum and Order.)

Assuming for the moment that each of the Texas statutes under attack is an expression of state-wide policy, the rationale of the line of cases represented by *Public Nat'l Bank, Wilentz,* and *Collins* would exclude the controversy surrounding each of these statutes from section 2281 and, accordingly, a three-judge court would be unnecessary. The reason is that the activities of the various officials charged with enforcing each of these statutes apparently relate to only a particular Texas municipality and the outcome of this litigation as to each of these statutes is therefore of the immediate concern of only the particular municipality to which the statute applies.

Although the denial of a three-judge court in this case is supported by the Supreme Court's decisions in *Public Nat'l Bank, Wilentz* and *Collins,* the denial of a three-judge court in this case rests upon much firmer footing: (1) None of these statutes contains an expression of "state-wide" policy; and (2) none is even potentially applicable "state-wide."

Each of the statutes involved herein purportedly applies to all cities in Texas containing a population, as measured by a certain Federal Census, within a range specified in the statute. At least in theory this type of statute can apply to any city in the state once the city's population falls within the population bracket of the particular statute. This type of "open-ended" legislation should probably be presumed to represent "state-wide" policy, in the absence of countervailing evidence. Indulging in this presumption would probably be justified even though the statute may presently apply only to a particular locality if there exists a reasonable potentiality that it will apply to other areas as their

population increases bring them within the statutory size. Such potential "state-wide" applicability should, in these cases, suffice for section 2281 purposes as the state legislature presumably drafted the statute to apply generally throughout the state. This conclusion finds direct support from Simon v. Landry, 359 F.2d 67 (5th Cir. 1966), cert. den., 385 U.S. 838, 87 S.Ct. 86, 17 L.Ed. 2d 72, where a three-judge court was required to test a Louisiana statute applicable to all parishes having a population of 50,000 or more. Sailors v. Bd. of Educ., 387 U.S. 105, 87 S.Ct. 1549, 18 L. Ed.2d 650 (1967), also supports this conclusion. In *Sailors*, the Court concluded that a three-judge court was properly convened because the challenged statute applied "generally to all Michigan county school boards of the type described . . . ." Id. at 107, 87 S.Ct. at 1551.

However, this suggested presumption certainly would be in appropriate whenever it is apparent that the statute was never intended to apply generally to all areas of the size or type described in the statute. Having examined the provisions of the statutes in this case, particularly the population brackets of each statute in conjunction with the applicable Federal Census of Texas cities, it is patently obvious that each of these statutes was meant to apply to only one city. This is illustrated in the Appendix to this Memorandum and Order. The legislative amendments to the sizes of the various population brackets, when considered in conjunction with the applicable Federal Censuses, clearly show that periodic and systematic legislative attempts were made to prevent other cities from qualifying under these statutes by way of increases in population. It does not appear that any city, other than the city originally qualifying under each statute, has ever subsequently qualified under any of these statutes. In fact, provisions of these statutes, in addition to the provisions placing limitations on population size, would seem to preclude this from ever happening. See footnotes to Chart in Appendix. It is apparent that if more than one city ever does qualify under any of these statutes, this will result from legislative inadvertence and not from a legislatively pronounced "state-wide" policy.

In support of their request for a three-judge court, plaintiffs have cited numerous Texas state court decisions holding that these and similar "classification" statutes are not invalid under the Texas Constitution for being local legislation. Whether or not we believe those cases to have been correctly decided is unimportant for present purposes for these cases are not relevant to determining whether these Texas statutes are "state-wide" under section 2281. The policies underlying the three-judge statute relate to the state-wide importance of the legislation and not to its constitutionality.

▮ The board members of the various pension systems involved are the only persons joined as defendants herein that are the effective means of executing the challenged statutes. These persons cannot be considered "state officers" within the restrictive meaning of section 2281 as they are neither functioning pursuant to a "state-wide" policy nor performing a state function. Rather, these defendants are performing matters of purely local concern.

▮ In summary, the court concludes that neither the "state statute" nor the "state officer" prerequisite to the applicability of 28 U.S.C. section 2281 is present. Accordingly, defendants' motion to deny the appointment of a three-judge court should be granted.

All members of this panel agree with the conclusion reached by the presiding judge that this is a one-judge matter, and not a three-judge matter. Therefore, this Jackson v. Choate three-judge panel is dissolved and the cause is remanded to the presiding judge for all further appropriate action.

The Clerk is directed to file and enter this Memorandum and Order and provide true copies hereof to counsel of record.

APPENDIX

| 1 ARTICLE | 2 YEAR OF AMENDMENT TO POPULATION BRACKET | 3 SIZE OF AMENDED POPULATION BRACKET | 4 APPLICABLE CENSUS | 5 CITIES WITHIN THE AMENDED BRACKET SIZE | 6 CITIES THAT WOULD HAVE BEEN WITHIN SIZE IF BRACKET NOT RAISED WHEN AMENDED | 7 CITIES WITH POPULATION CLOSE BUT NOT WITHIN BRACKET SIZE |
|---|---|---|---|---|---|---|
| 6243g-1 (see footnote 1) | 1947 | 384,000 plus | 1940 | Houston—384,514 | | |
| | 1955 | 500,000 plus | 1950 | Houston—594,321 | Dallas—434,462 San Antonio—408,442 | |
| | 1963 | 900,000 plus | 1960 | Houston—938,219 | Dallas—679,684 San Antonio—587,718 | |
| 6243e (see footnote 2) (§ 10Ef) | prior to 1963 | 500,000 plus | 1950 | Houston—594,321 | | Dallas—434,462 San Antonio—408,442 |
| | after 1963 | 800,000 plus | 1960 | Houston—938,219 | Dallas—679,684 San Antonio—587,718 | |
| 6243a (see footnote 3) | 1935 to 1951 | 240,000 to 275,000 | 1930 | Dallas—260,475 | | Houston—292,352 San Antonio—231,542 |
| | 1951 | 432,000 plus | 1950 | Dallas—434,462 | | |
| 6243f (see footnote 4) | prior to 1951 | 200,000 to 293,000 | 1940 | San Antonio—253,854 | | Dallas—294,734 |
| | 1951 to 1963 | 350,000 to 430,000 | 1950 | San Antonio—408,442 | Fort Worth—277,047 | Dallas—434,462 |
| | after 1963 | 550,000 to 650,000 | 1960 | San Antonio—587,718 | Fort Worth—356,268 | Dallas—679,684 |
| 6243b (see footnote 5) | 1930 to 1963 | 100,000 to 185,000 | 1930 | El Paso—102,421 Fort Worth—163,447 | Amarillo—137,969 Austin—186,545 Beaumont—119,175 Corpus Christie—167,690 Lubbock—128,691 Wichita F.—101,724 | Dallas—260,475 San Antonio—231,542 |
| | 1963 | 275,000 to 300,000 | 1960 | El Paso—276,687 | | Fort Worth—356,268 |

[A5771]

1. Section 1 of Art. 6243g–1 also provides that it does not apply to any city which already has a police, firemen and fire alarm operators pension system organized under another statute. If another Texas city grows to a size within the population brackets of 6243g–1 it would already have such a fund organized under one of the other statutes. Thus, Art. 6243g–1 can only apply to Houston.

2. Art. 6243e creates a Firemen's Relief Pension Fund. Section 27A provides that Art. 6243e shall not apply to any city which has heretofore established a joint police, firemen's and fire alarm operators' Pension and Retirement System. Thus, Art. 6243e can never apply to Dallas, San Antonio or El Paso.

3. Section 17 of Art. 6243a contains a provision similar to those mentioned in footnotes 1 and 2 with respect to Arts. 6243g–1 and 6243e, respectively.

4. Section 1 of Art. 6243f provides that once a pension system becomes operative under this article the pension system is to continue to operate and function under this article regardless of whether future population exceeds or falls below the specified population bracket.

5. Section 18 of Art. 6243b provides that once a fund is established under this article it shall continue to be operated regardless of whether any future Federal Census may cause the city to fall outside the specified population bracket.

Column 5 indicates that Fort Worth, as well as El Paso, fell within the specified population range under Art. 6243b. However, Fort Worth has such a pension system organized under 6243j which provides in Section 1 that once established under 6243j, said pension system shall continue to operate under Art. 6243j regardless of changes in population. Thus, Art. 6243b applies only to El Paso.