Leona P. **THOMAS** and Augusta P. Fin-klestein, for themselves and those similarly situated

v.

Fred **BURKE**, as Commissioner of Education of the State of Rhode Island, et al.

Civ. A. No. 74–26.

United States District Court, D. Rhode Island.

July 11, 1974.

232

Amato A. DeLuca, Warwick, R. I., Allan M. Shine, Providence, R. I., for plaintiffs.

Richard P. McMahon, Providence, R. I., William T. Murphy, Pawtucket, R. I., for St. Joseph's.

W. Slater Allen, Jr., Asst. Atty. Gen. for the State of Rhode Island, Providence, R. I., for defendants.

## OPINION

PETTINE, Chief Judge.

The plaintiffs, residents and taxpayers of Woonsocket, Rhode Island, bring this action individually and on behalf of all other taxpayers similarly situated to enjoin an allegedly unconstitutional expenditure of State and local public funds to private parochial schools. The complaint alleges that pursuant to R.I. Gen'l Laws 1956 (1969 Reenactment) § 16–2–15 [1] the defendant School Committee for

1. R.I. Gen'l Laws 1956 (1969 Reenactment) § 16–2–15 provides: ·

"16–2–15. Location of schools—Control of property—The school committee shall locate all schoolhouses, and shall not abandon or change the location of any without good cause; and unless otherwise provided by law, said school committee of each town shall have the care and control of all public school buildings and other public school

the City of Woonsocket has entered into a lease agreement with the defendant St. Joseph's School for the rental of classrooms in St. Joseph's Parochial School for use as public school facilities by public school students. Further, the complaint alleges that the State of·Rhode Island through the State Board of Regents for Education, the State Department of Education, and the State Treasurer has paid or will pay state funds pursuant to R.I. Gen'l Laws 1956 (1969 Reenactment) § 16–7–15 et seq. to the School Committee for the City of Woonsocket to reimburse the School Committee for expenditures related to the lease with St. Joseph's Parish. Finally, the complaint asserts that similar lease arrangements are in existence throughout Rhode Island and that in each instance state funds are being utilized. The plaintiffs contend that these lease arrangements with sectarian institutions and the concomitant expenditure of public funds in furtherance thereof violate the First and Fourteenth Amendments to the United States Constitution because they interfere with the free exercise of religion on the part of the plaintiffs by reason of the fact that they constitute compulsory taxation for religious purposes and because they foster an excessive government entanglement with religion.

Jurisdiction is based upon 28 U.S.C. § 1343(3). As relief, the plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 that the above described actions violate the First and Fourteenth Amendments of the United States Constitution and an order enjoining the defendants from further performance of the terms of the St. Joseph's Parish—Woonsocket lease arrangement and from making any additional expenditures of public funds in furtherance of this lease or similar lease arrangements in Rhode Island.

The issue presently before this Court is whether a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284 should be convened. 28 U.S.C. § 2281 provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

## FACTS

For the purposes of this motion only the following facts may be discerned from the plaintiffs' complaint and the deposition of William P. Robinson, Jr.,

property of the town, including repairs of said buildings and the purchase of furniture and other school equipment.

The school committee of any town may provide public school housing for the town by lease of buildings or portions thereof, furniture and other school equipment, subject to the following provisions:

A. During the period or periods to which such lease applies the property so leased shall be public school property of the town in all respects to the same effect as any public school building of the town;

B. Such lease shall provide for use and occupancy of periods at least the same as or equivalent to the periods during which public school buildings of the town are used and occupied;

C. As applied to rooms for instruction such lease shall provide for exclusive use and occupancy during the periods thereof and may provide for common or concurrent use and occupancy of other areas of the property; . . .

Upon application of the school committee of any town, the commissioner of education may prescribe by regulation standards for such leases in accordance herewith and in accordance with the constitution, laws and education policies and programs of the state. The expenses of the town under such lease shall constitute expenditures to support the basic program pursuant to the provisions of [§ 16–7–15 to 16–7–34]."

former Commissioner and present Associate Commissioner of Education for the State of Rhode Island: On September 1, 1973 the Woonsocket Education Department, through the Woonsocket School Committee, entered into a lease with the St. Joseph's School for the rental of four classrooms in the building which houses the St. Joseph's Parochial School. The term of the lease is 10 months renewable at the discretion of the tenant Woonsocket Education Department for five consecutive 10 month periods from September 1 through June 30 each year. Two of the classrooms are in the basement of the building and according to paragraph 12 of the lease, St. Joseph's School gives permission to the School Committee to construct classrooms and renovate the ceiling and light fixtures in this portion of the demised premises. Paragraph 13 provides that any improvements made by the School Committee remain its property and may be removed upon the expiration of the rental agreement.

The plaintiffs do not allege that these classrooms will be used to conduct classes for children enrolled in the private sectarian school; nor do they allege that public school teachers will conduct classes for students enrolled in the St. Joseph's School. The lease represents nothing more than a pure rental of space resulting from a determination by the public school officials that additional facilities are needed to house students attending public school. Public school children will be taught in these classrooms by public school teachers under the administration of public school authorities. The basic rental charge for the 10 month period is $5,000.00 plus the School Committee's proportionate share of the cost of renovating the basement of the building. Finally, it should be noted that the parochial school utilizes the building at the same time as the public school children although the public school children do have exclusive use of the particular classrooms during their period of occupancy.

A survey conducted by the State Department of Education in March 1974 shows that out of 35 local school committees in the State of Rhode Island responding to the question, "Does your school department lease or rent any classrooms in non-public school buildings for public school use?," fourteen responded affirmatively. (This figure includes Woonsocket). Of these, ten appear to rent space from active parochial schools, one rents space in a former parochial school, and one rents space in a parish community house. Twenty-one school committees rent no space in non-public school buildings for public school use. Thus, forty percent of the school districts responding to the State's questionnaire do rent space in non-public buildings.

Dr. Robinson testified that he first learned of the proposed lease on June 28, 1973 through a letter from the Superintendent of Schools for the City of Woonsocket. The sole purpose of the letter to Robinson was to obtain his opinion whether several decisions handed down by the United States Supreme Court in June 1973 would have any legal effect on the constitutionality of the proposed leasing arrangement with the St. Joseph's School. In fact, a local school committee need not obtain the approval of the State Department of Education before entering into a lease for the use of non-public buildings for public school purposes. Although R.I. Gen'l Laws § 16–2–15, which provides that a school committee may lease facilities for use as a public school, also gives the Commissioner of Education the power to prescribe regulation standards for such leases, no regulations have ever been promulgated. Thus, it appears that a local school committee can enter into similar lease arrangements without formally notifying the State or supplying the State with a copy of the lease or even a summary of its terms. Dr. Robinson noted that prior to the June 1973 letter, he had been unaware that Woonsocket had been renting classroom

space for the previous four years and that until the March 1974 survey, he was unaware how many and which other local school committees were doing likewise.

However, there is no question that through the State's "Foundation Level School Support" legislation, R.I. Gen'l Laws 1956 (1969 Reenactment) § 16–7–15 et seq., the State is reimbursing the City of Woonsocket for a percentage of the costs of the St. Joseph's School rental and classroom renovation. R.I. Gen'l Laws § 16–2–15 explicitly provides that expenses incurred by the community for lease of space for the public schools constitutes "expenditures to support the basic program pursuant to the provisions of [§§ 16–7–15 to 16–7–34]." Accordingly, lease expenses are included in the budget submitted by the local school district to the State annually for use as one of the factors in the equation by which it computes the amount of the State's share of the cost of the locality's basic public education program. The sequence of these events, as related by Dr. Robinson, is that the local communities determine the expenditures to be made, make the expenditures and, then, apply to the State for reimbursement. There is no special incentive built into the State "Foundation Level School Support" legislation to encourage the communities to enter into lease agreements with private schools. The percentage of reimbursement the community receives for this form of expenditure is the same that it receives for all other qualified education expenditures.

### CONCLUSIONS OF LAW

■ For § 2281 to apply, an injunction must be sought on constitutional grounds against the enforcement or execution of a state action by a state official pursuant to a state statute or regulation of state-wide applicability. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940). Each of the above criteria must be satisfied to warrant a three-judge court. I recognize that what the Court is about to state represents a very strict construction of § 2281, but I note that the history of the three-judge court statute mandates this approach. Concerned with the heavy burden placed upon the federal judiciary by the three-judge court requirement, the court in Phillips v. United States, 312 U.S. 246, 250–251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941) gave a strict construction to 28 U.S.C. § 2281:

> "The history of § 266 [28 U.S.C. § 2281], the narrowness of its original scope, the piece-meal explicit amendments which were made to it, . . . the close construction given the section in obedience to Congressional policy, . . . combine to reveal § 266 [§ 2281] not as a meaure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such."

Earlier Mr. Justice Brandeis had recognized in Ex parte Collins, 277 U.S. 565, 567–568, 48 S.Ct. 585, 586, 72 L.Ed. 990 (1928) the limited role to be played by the three-judge court when he wrote that the "section was intended to embrace a limited class of cases of special importance and requiring special treatment in the interest of the public." Accord, Bd. of Regents v. New Left Education Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972). This policy sets the tone for examination of the present motion. Determination of the need for a three-judge court focuses on the role played by the challenged state statutes. In the instant action, the role is twofold. The plaintiffs challenge the constitutionality of § 16–2–15, R.I. Gen'l Laws which enables local school committees to enter into lease arrangements and § 16–7–15 et seq. through which the State reimburses local school committees for a percentage of their educationally oriented expenditures.

Three distinct questions concerning the various criterion of the three-judge

court test are presented by this case. In condensed form the three issues are:

1) Does this action represent a challenge to a state statute on its face or as applied, or does it represent a challenge to the lawless or unconstitutional actions of public officials in the administration of an admittedly constitutional statute?

2) Does the complaint challenge a state statute of statewide applicability or effect or a statute of concern only to a particular area within the State?

3) The third inquiry is intimately related to and often integrated with consideration of the second. Is the thrust of this action focused against a state official's performance of a state function or the enforcement of an affirmative state program or policy, or is it more accurately described as an action directed against local officials involved in the performance of a local function? As to issues one and two, the requirements for a three-judge court are satisfied for reasons that I shall explain *infra*. Indeed, based upon only those two criteria it could be said that this case appears appropriate for a three-judge court. Nonetheless, I conclude that a three-judge court is improper because of marked, legally significant factual distinctions between this case and both Flast v. Cohen, *supra*, and Americans United for Separation of Church and State v. Paire, 475 F.2d 462 (1st Cir. 1973) which demonstrate that the case at bar does not satisfy the third criterion to be analyzed. I will discuss each separately.

■ The first inquiry revolves around whether the complaint seeks an injunction on the ground of the unconstitutionality of the state statutes[2] or on the ground of the unconstitutionality of the result obtained by the unlawful administration by a public official of a state statute not itself attacked as unconstitutional. Only the former requires the convening of a three-judge court. Phillips v. United States, *supra;* Ex parte Bransford, *supra*. A complaint which only attacks the "lawless exercise of authority in a particular case" by a public official, but which does not raise a substantial question concerning the federal constitutionality of the statute, may be decided by a single judge. Phillips v. United States, *supra;* Note, "The Three-Judge District Court: Scope and Procedure Under Section 2281," 77 Harv.L. Rev. 299, 312–313 (1963). The ease with which this test is stated belies the subtle distinctions which must be drawn in its application.

■ The state statutes in question do not on their face authorize or require the local school committees to become entangled with sectarian institutions, nor do they mandate the expenditure of state funds for religious purposes. Section 16–7–15 et seq. broadly and generally provides for state assistance to public education. Section 16–2–15 simply confers authority on local authorities to lease space to supplement the capacity of their public school facilities. The statutes are neutral and silent on the issue of church and state entanglement. The terms could be read either to embrace, permit, or exclude the challenged action. Moreover, the plaintiffs assail the relevant statutes only so far as they permit state assistance to religious institutions. Yet, courts have consistently held that challenges to broad, seemingly neutral statutes are to be considered as an attack on the constitutionality of the statute as applied warranting a three-judge court rather than as only a challenge to the unlawful conduct of the official administering the statute. The court in Query v. United States, 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942) indicated that a three-judge court would be required where a statute was challenged as unconstitutional as applied unless the cause of action was directed against the conduct of state officials "which state law could not reasonably be construed to authorize." *Id.* at 490, 62 S.Ct. at 1124. Where the statute can be read to permit, although not require,

---

2. Either on their face or as applied.

the acts in question, the application of the statute is clearly constitutional in certain cases but arguably unconstitutional in the scheme under attack, and the acts are not clearly in excess of the statute's authority, a three-judge court is mandatory according to the interpretation given the test by *Query.* Astro Cinema Corp., Inc. v. Mackell, 422 F.2d 293 (2d Cir. 1970); McGlotten v. Connally, 338 F.Supp. 448 (D.D.C.1972); Safeguard Mutual Insurance Co. v. Commonwealth of Pennsylvania, 329 F.Supp. 315 (E.D.Pa.1971). Two recent United States Supreme Court cases point out the effect of this principle. In Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed. 2d 179 (1964), the plaintiff asserted that either the administrator's order prohibiting travel to Cuba was in excess of the authority granted him by Congress, or that the statute was unconstitutional as applied. The statute broadly stated only that, "The Secretary of State may grant and issue passports . . . under such rules as the President shall designate . . . ." Despite the generality and facial neutrality of the statute, the court held that a three-judge court was properly convened. In Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the plaintiff attacked the constitutionality of Title I and II of the sectarian schools was not expressly au-Elementary and Secondary Education Act of 1965, 20 U.S.C. § 241a et seq. which provided for financial assistance to public and private elementary and secondary schools. Aid to religious and thorized and the plaintiff disclaimed any intent to challenge programs other than those providing assistance to religious and sectarian schools. Based upon these facts the court upheld the convening of a three-judge court and rejected the Government's argument that the plaintiffs "question[ed] not the constitution-

ality of the Elementary and Secondary Education Act of 1965, but its administration." In both *Zemel* and *Flast,* the court concluded that what was at issue was the constitutionality of the relevant statutes and not just the unlawful administration of a constitutional statute. Utilizing the same reasoning, I conclude that the plaintiffs' challenge is on the statute "as applied" and fulfills this criterion for a three-judge court.[3]

The second inquiry concerns whether the complaint challenges a statute of state-wide applicability or state-wide effect. Holding that a three-judge court lacked jurisdiction to decide whether a state statute which prescribed the apportionment and districting scheme for electing members to the Houston, Texas County Board of Revenue and Control was unconstitutional, the Supreme Court in Moody v. Flowers, 387 U.S. 97, 101, 87 S.Ct. 1544, 1548, 18 L.Ed.2d 643 (1967) remarked:

> "The Court has consistently construed the section as authorizing a three-judge court not merely because a state statute is involved but only when a state statute of general and statewide application is sought to be enjoined. See e. g., Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990; Ex parte Public National Bank, 278 U.S. 101, 49 S.Ct. 43, 73 L.Ed. 202; Rorick v. Board of Commissioners, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242; Cleveland v. United States, 323 U.S. 329, 332, 65 S.Ct. 280, 281, 89 L.Ed. 274; Griffin v. School Board, 377 U.S. 218, 227–228, 84 S.Ct. 1226, 1231–1232, 12 L.Ed.2d 256."

In *Moody,* the state statute was applicable to only one county in the entire state. Thus, 28 U.S.C. § 2281 did not apply. Accord, Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967).

---

3. The constitutionality of a broad, general statute which was neutral on its face and in most situations constitutional as applied was challenged as unconstitutional as applied to the particular plaintiffs in Native American Church of Navajoland, Inc. v. Arizona Corporation Commission, 405 U.S. 901, 92 S.Ct. 934, 30 L.Ed.2d 775 (1972), aff'g without opinion, 329 F.Supp. 907 (D.Ariz.1971). In his dissent Justice Douglas argued that a three-judge court had been improvidently convened because the statute was "neutral in scope and application." However, his was the only dissenting vote.

A similar result was reached in Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). The *Griffin* decision was only one of a number of decisions arising out of the repeated attempts of Prince Edward County to avoid integrating their public school system and the court commented, "Even though actions of the State are involved, the case, as it comes to us, concerns not a state-wide system but rather a situation unique to Prince Edward County. We hold that the single district judge did not err in adjudicating the present controversy." *Id.* at 228, 84 S.Ct. at 1232. Decisive in the *Griffin* decision is the recognition that although a state statute of state-wide applicability on its face is involved, the practical effect and application of the statute and any judicial determination concerning the statute would be of concern to only a particular locality within the state. See Walker v. City of Houston, 341 F.Supp. 1117 (S.D. Tex.1971).

However, R.I. Gen'l Laws §§ 16–2–15 and 16–7–15 et seq. both appear on their face to be of state-wide application. Moreover, although the complaint focuses on a single municipal program, the plaintiffs have alleged and the deposition of Dr. Robinson has verified that leasing arrangements between local public school officials and sectarian, religious institutions exist in a substantial number of communities throughout the state at the present time. Neither statute was designed to benefit only a particular portion of the state, nor has their effect been so limited and the decision of this Court in this action would have state-wide effect. In this respect the fact situation in Flast v. Cohen, *supra,* resembles the issue now before the Court. The plaintiffs in *Flast* challenged a federal program of financial assistance to local educational agencies for the education of low income families. The plaintiffs' complaint focused on an alleged constitutional infirmity arising out of the practices of the New York Board of Education. The defendant contended that a single judge had jurisdiction. The court rejected the defendant's argument as follows:

"It is true that the appellants' complaint makes specific reference to the New York City Board of Education's programs which are funded under the challenged statute, and we can assume that appellants' proof at trial would focus on those New York City programs. However, we view these allegations of the complaint as imparting specificity and focus to the issues in the lawsuit and not as limiting the impact of the constitutional challenge made in this case. The injunctive relief sought by appellants is not limited to programs in operation in New York City but extends to any program that would have the unconstitutional features alleged in the complaint. Congress enacted § 2282 'to prevent a single federal judge from being able to paralyze totally the operation of an entire regulatory scheme . . . by issuance of a broad injunctive order.' Kennedy v. Mendoza-Martinez, 372 U.S. 144, 154, [83 S.Ct. 554, 560, 9 L.Ed.2d 644] (1963). If the District Court in this case were to rule for appellants on the merits of their constitutional attack on New York City's federally funded programs, that decision would cast sufficient doubt on similar programs elsewhere as to cause confusion approaching paralysis to surround the challenged statute. Therefore, even if the injunction which might issue in this case were narrower than that sought by appellants, we are satisfied that the legislative policy underlying § 2282 was served by the convening of a three-judge court, despite appellants' focus on New York City's programs."

392 U.S. at 89–90, 88 S.Ct. at 1947. See also Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967).[4] The effect of the statutes

---

4. The recent case of Board of Regents v. New Left Education Project, 404 U.S. 541, 92 S.Ct.

652, 30 L.Ed.2d 697 (1972) does not hold to the contrary. The actions sought to be en-

challenged by the plaintiffs is clearly state-wide and, as in *Flast*, the nature of the action and the broad relief requested is not altered because the complaint focuses on the actions of a single community where the attack is one of state-wide significance.

■■■ The third inquiry presents a more difficult issue. As the court in Moody v. Flowers, *supra*, stated:

"The term 'statute' in § 2281 does not encompass local ordinances or resolutions. The officer sought to be enjoined must be a state officer; a three-judge court need not be convened where the action seeks to enjoin a local officer (Ex parte Collins, *supra*; Rorick v. Board of Commissioners, *supra*) unless he is functioning pursuant to a statewide policy and performing a state function. Spielman Motor Sales Co. v. Dodge, 295 U.S. 89 [55 S.Ct. 678, 79 L.Ed. 1322]. Nor does the section come into operation where an action is brought against state officers performing matters of purely local concern. Rorick v. Board of Commissioners, *supra*. And, the requirement that the action seek to enjoin a state officer cannot be circumvented 'by joining, as nominal parties defendant, state officers whose action is not the effective means of the enforcement or execution of the challenged statute.' Wilentz v. Sovereign Camp, 306 U.S. 573, 579–580, [59 S.Ct. 709, 713, 83 L.Ed. 994]." 387 U.S. 101–102, 87 S.Ct. 1548.

In other words, a three-judge court may not be convened despite the involvement of a state statute unless the relief sought seeks to enjoin state officials performing a state function and/or seeks to enjoin the enforcement of a state policy or program. Where the injunction sought against state officials is but in-

cidental to the sole purpose of the suit to prevent the performance by local officials of a local function or where the state officials are clothed with no authority to enforce the challenged statute, no three-judge court is required. Ex parte Collins, *supra*; Wilentz v. Sovereign Camp, W.O.W., 306 U.S. 573, 59 S.Ct. 709, 83 L.Ed. 994 (1938); McCrimmon v. Daley, 418 F.2d 366 (7th Cir. 1969); Ashenhurst v. Carey, 351 F. Supp. 708 (N.D.Ill.1972). The reason for this limitation is clear. Section 2281 was designed to prevent a single judge from bringing to a halt the policies and programs of the state alone. Accordingly, a challenge to permissive state enabling legislation which is administered and enforced by local officials does not require a three-judge court. Monroe v. Board of Commissioners, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968), Wilentz v. Sovereign Camp, W.O.W., *supra*; Ex parte Collins, *supra*; McCrimmon v. Daley, *supra*; Walker v. City of Houston, *supra*; James v. Duckworth, 170 F.Supp. 342 (E.D.Va.), aff'd, 267 F.2d 224 (4th Cir.), cert. denied, 361 U.S. 835, 80 S.Ct. 88, 4 L.Ed.2d 76 (1959). Cf. Pervis v. LaMarque Independent School District, 466 F.2d 1054 (5th Cir. 1972). For example, in McCrimmon v. Daley, *supra*, the city passed an ordinance prohibiting the employment of barmaids in establishments where liquor is sold for consumption pursuant to an Illinois statute which gave to the cities the authority to regulate the retail sale of alcohol, including the authority to pass an ordinance prohibiting women from "drawing, pouring, or mixing any alcoholic liquor as an employee of any retail licensee." The Illinois act also gave to local officials the authority to administer and enforce any laws passed in furtherance thereof. The court refused to convene a three-judge court

---

joined in that case were regulations promulgated by the Board of Regents which had power over only the University of Texas. The regulations did not cover non-university areas and only covered state campus areas. Of more than 20 colleges in Texas, only three

were state affiliated and affected by the regulations in question. In the case at bar, all communities within the state are eligible for state funds under the applicable statutes if they so desire and a substantial number are presently doing so.

and held that the only real issue involved a local city ordinance enforced by local officials. And in Ex parte Collins, *supra*, the court held that § 2281 did not apply to a suit by a party aggrieved by the actions of the city of Phoenix taken pursuant to a state statute which authorized cities to pass an ordinance assessing the cost of street improvements against abutting property owners. The rationale of the court is instructive:

"Though here the alleged unconstitutionality rests in the enabling statute, the case does not differ substantially from one where the sole claim is that a city ordinance is invalid. Moreover, the enabling act is not itself being enforced within the meaning of section [2281]. That act merely authorizes further legislative action to be taken by the city, as by the resolution here in question. It is that municipal action, not the statute of a state, whose 'enforcement, operation, or execution' the petitioner seeks to enjoin."

277 U.S. at 569, 48 S.Ct. at 586.

Consequently, if the plaintiffs solely sought to attack as unconstitutional and enjoin actions taken pursuant to that portion of § 16–2–15 which authorizes local school committees to lease non-public buildings for public school purposes, a three-judge court would clearly be improper. However, several additional factors must be taken into consideration in determining whether the state involvement in the present action is sufficient to require a three-judge court. In none of the cases cited above involving state enabling legislation did the plaintiffs attack the use of state funds to support programs promulgated thereunder as the plaintiffs have here. Also, in most of the cases already cited, the state abdicated its power to the local government to supervise, administer, or enforce the programs undertaken pursuant to the enabling act.

Two recent cases involving government sponsored education programs through which public funds were funneled to religious institutions which considered these added factors provide the closest analogy to the facts at hand. In both cases a three-judge court was held to be required. On its face, this case appears analogous to Americans United For Separation of Church and State v. Paire, 475 F.2d 462 (1st Cir. 1973). Both involve a lease of classroom space from a church school by a local community pursuant to state enabling legislation. However, in *Paire* the state's involvement in the alleged church-state entanglement was predominant; here it is not. The court found that the New Hampshire statutes in question were intentionally designed to and did affirmatively encourage the precise interaction challenged and represented a clear, overt state policy to benefit church associated schools.[5] Moreover, the state statutes in New Hampshire provided a special financial incentive to communities who entered into dual enrollment agreements by entirely funding the cost to the local community of these agreements for the first year.[6] Finally, the New Hampshire leases in question, while local in nature, were drawn in strict compliance with state regulations and subject to direct state approval. Thus, the court concluded that the question of the constitutionality of the local lease agreement and the state statutory and regulatory scheme could not be separated. When read together, the court held:

"They delineate a specific state policy; It is against the enforcement of that policy, not merely against a locally-drawn contract, that the plaintiffs seek to interpose the Constitution.

---

5. The New Hampshire statutes authorized a dual enrollment system which permits students to satisfy their mandatory public education requirement by attending the public schools part-time and the parochial schools part-time. NH RSA 193:1–a(supp). This switches the burden to the public education system of paying teachers who teach secular subjects to individuals otherwise enrolled in the parochial school.

6. NH RSA 198:21(supp).

See Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941). We would be fooling no one, not even ourselves, were we to pretend otherwise. The possibility of so attempting is furthermore removed by the breadth of the plaintiffs' allegations and prayers, by the stipulation, and by the obvious fact, appearing from every page of the lease and dual-enrollment agreement, that what is sought to be prevented is a major state program, authorized and funded by the legislature, and executed by state officers, two of whom are defendants." *Id.* at 466.

The dominant role played by the state in supervising and controlling the terms of the lease arrangements, the additional financial incentive provided by statute to communities entering into these lease arrangements, and the discernible intent of the state statutes to benefit church associated schools combine to distinguish *Paire*. In Rhode Island the state plays no role in the formation of lease arrangements between local school committees and religious institutions. While state funds are provided to local school committees pursuant to the general "Foundation Level School Support" legislation to offset a percentage of the cost of any such leases, the state pays no greater percentage of these expenses than it does other educational expenditures under § 16–7–15 et seq. thus, offering no incentive to local school committees to enter into lease arrangements or more specifically to enter into these arrangements with private parochial schools. Finally, a reading of the relevant state statutes discloses no legislative intent to benefit private, church associated institutions.

As I have noted previously in Flast v. Cohen [7] *supra*, the plaintiffs challenged the defendants' approval of the expenditure of federal funds under Title I and Title II of the Elementary and Second-

ary Education Act of 1965, 20 U.S.C. § 241a et seq. to "finance 'instruction in reading, arithmetic and other subjects and for guidance in religious and sectarian schools' and 'the purchase of textbooks and instructional and library materials for use in religious and sectarian schools.'" 392 U.S. at 87, 88 S.Ct. at 1946. Title I of the Act established a program of financial assistance to local education agencies for the education of low income families. The federal funds were passed to state agencies to parcel out to local agencies which submitted a specific plan for approval of how the money was to be used. Each plan had to be consistent with criterion established by the United States Commissioner of Education. Among the criteria he established were:

> "'that, to the extent consistent with the number of educationally deprived children in the school district of the local educational agency who are enrolled in private elementary and secondary schools, such agency has made provision for including special educational services and arrangements (such as dual enrollment, educational radio and television, and mobile educational services and equipment) in which such children can participate. . . .'" 20 U.S.C. § 241e(a)(2)."

392 U.S. at 86, 88 S.Ct. at 1945.

Additionally, 20 U.S.C. § 241f gave the United States Commissioner of Education broad powers to supervise a state's participation. Finally, in order to participate in Title II which established a federal program for the acquisition of school library resources and other printed material, a state was first required to submit for approval a plan and the plan was required to:

> "'provide assurance that to the extent consistent with law such library resources, textbooks, and other instructional materials will be provided

---

7. The applicability of 28 U.S.C. § 2282 rather than 28 U.S.C. § 2281 was in question in *Flast* because federal statutes were challenged.

Nonetheless, the relevant analysis applies to both statutory provisions.

on an equitable basis for the use of children and teachers in private elementary and secondary schools in the State. . . .' 20 U.S.C. § 823(a)(3)(B)."

392 U.S. at 86, 88 S.Ct. 1945. Only after finding that the federal officials possessed broad powers of supervision over participation in the challenged programs and that it was federal funds administered by federal officials that financed the local programs, the court concluded that the federal participation was not so "remote" as to obviate the need for a three-judge court.

The Rhode Island situation differs in three significant respects. First, although § 16–2–15 expressly reserves to the State Commissioner of Education the power to "prescribe by regulation standards for such leases in accordance . . . with the constitution, laws and education policies and programs of the state," he has not done so. Excluding the minimal requirements set forth in the statute, the local school committees have complete freedom in negotiating the terms of these lease arrangements. In *Flast,* not only did the Commissioner promulgate detailed regulations to govern the challenged program, but those regulations specifically provided for aid to private schools and suggested the use of dual enrollment arrangements. Second, in *Flast,* broad supervisory powers over participation in the challenged programs were expressly reserved to the Commissioner. Third, in *Flast,* prior approval of the details of the local plan for which the funds would be earmarked was required. In Rhode Island, the local school committee is free to enter into a lease for use of non-public buildings for public school purposes without prior approval or even notification to the state and there is no requirement that the state need be informed of the details of the arrangement. Thus, while the federal government in *Flast* could be said to have played a very active role in the challenged activity so that any injunction which might have issued could be considered to have the effect of halting a major federal program, the role of the State of Rhode Island in the present action is negligible and no similar state policy or program may be discerned to be in jeopardy. It neither encourages, supervises, or administers the challenged actions. The sole role of the state is the appropriation of state funds to reimburse local school committees for a set percentage of their basic education expenditures and when a part of those funds are for leasing additional school space, that expenditure is treated no differently. The state is not involved in the decision-making process which determines the precise use of these education funds. By comparison with *Flast* or *Paire,* it is clear that what is involved here is not an action against a state program or policy, but rather an action against the local use of state funds. To repeat the holding of the court in Wilentz v. Sovereign Camp, W.O.W., *supra,* a three-judge court is improper where the state action sought to be enjoined "is but incidental to the sole purpose of the suit to prevent the performance by local officers of a local function." 306 U.S. at 581, 59 S.Ct. at 714.

█ Consistent with the above findings and in recognition of the "strict construction" required to be given to 28 U.S.C. § 2281, I conclude that a three-judge court is improper in the instant action. In so deciding, I am not unmindful of either the discussion of the first two criterion in question or the potential effect on local communities throughout the state that may result from a decision for the plaintiffs. I am also cognizant of the fact that respected minds could conclude that *Flast* cannot be distinguished from the present case, but this Court feels that the holding in *Flast* cannot be divorced from the context in which it took place.

Plaintiffs' motion be and hereby is denied.

The motion of the defendant St. Joseph's Parish to strike the plaintiffs' demand for a three-judge court be and hereby is granted.